MERRIMON, C. J., and SHEPHERD, J., dissenting.
The plaintiff sued on a promissory note, of which the following is a copy:
"$125.00. DURHAM, N.C. 13 Feb'y, 1891.
"Six months after date I promise to pay to the order of W. B. Pallett Co. one hundred and twenty-five dollars, negotiable and payable at Durham Fence Factory, or office of Wortham, Warren Co. Planing Mills. Value received.
"Indorsed: W. B. Pallett Co. J.H. DRAKE."
The defendant admitted the execution, pleaded fraud in the factum, failure of consideration, and equities arising out of a contemporaneous contract, as set out in the answer.
The plaintiff introduced the note and rested his case.
The execution of the note having been admitted, the defendant offered in evidence an agreement between W. B. Pallett Co. and himself, marked "A," which was in substance that, "whereas, W. B. Pallett 
Co., of the town of Durham, had established a permanent industry in Durham for the purpose of manufacturing and selling the Champion Combination Slat and Wire fence, upon the consideration named they appointed the defendant agent to sell the manufactured fence in the township of Baldwin, Chatham County, and receive the compensation named. The said W. B. Pallett Co. were at all times to furnish the defendant with the fence at the price of 45, 50 and 52 cents per rod, according to the character of the fence, and the defendant was to pay Pallett Co. five cents per rod of the commission after he had sold 1,000 rods of fence and received all the commission, $250; as he has this day secured to be paid $125 by execution of his note, being (293) one-half of the commission on the first 1,000 rods of fence sold. And if 500 rods of fence are not sold at the end of six months by the said second party, then said company, or their authorized representative, are fully empowered to cancel said agency, and appoint another agent in his stead; but if they decide to cancel said agency, which shall be at their option, they shall surrender said note after first being paid one-half of the commission on the fence sold during the said six months."
The defendant testified: "One W. B. Pallett came to me and proposed to make me his agent for six months for my township in Chatham County, telling me he had established a permanent factory in the town of Durham for the manufacture of a wire fence described in circulars, which he read to me, and of which he gave me several copies. I executed my note, and we executed the contract in duplicate. He told me the note was simply to butt against the fence, and that at the end of six *Page 213 
months it would be given up to me and canceled, and if I sold no fence I would have to pay nothing on it. In about two weeks after this I went to Durham, and went to see Wortham, Warren Co. I found no fence, no factory, and that W. B. Pallett had left the country. I went there to get the fence. I wanted some for my own farm, and some for my neighbors. This is the only time I went or sent about buying the fence. I never wrote about it." The defendant rested his case.
G. C. Farthing, the plaintiff, testified: "I bought the note sued on 19 February, 1891, and paid $100 for it. I did not know of the contract. I bought of W. B. Pallett Co. I live in Durham, and have lived there for twenty-six years. I am a merchant and not a dealer in paper like this note. I had known Pallett but a few days. He was a stranger in Durham. Shortly after I purchased the note he left Durham. I heard of him in Danville. At the time I bought this note I purchased four others. He had previously sold nine others to J. F. Slaughter. Slaughter had spoken to me about them before I purchased. (294) He had the pick and paid $100 each for the ones he bought. I paid $100 each for the three of those I bought, but for two, upon men I thought not good, I paid $62.50, making $425 in all for the five notes of $125 each.
"The notes Slaughter bought were for the same sums, and upon the same banks as the one sued on. I knew that the notes were given for some sort of a township right. Pallett told me. I didn't know what sort of a contract. I knew at that time that there was no factory in Durham called the Durham Fence Factory, at which the notes were made payable. There is no such factory there now. I made inquiries of Make Jeans of the financial standing of the defendant, and of C. N. Justice, the obligor in another of the notes I bought, both of whom reside in Chatham County. He told me they were good for their debts. I did not tell him that I knew that there was any contract between Pallett and Dark by which Wortham, Warren Co. were to furnish a fence. I saw Justice shortly after I purchased the notes, and offered to sell him his note for $110. I did not tell him that I gave that sum for it. I gave $100 for his note."
W.H. Wortham, for the plaintiff, testified: "I am the Wortham of Wortham, Warren Co. Planing Mills. Pallett came to see me, and made a contract with me for the manufacture of wire fence. It is in writing. I am prepared to furnish the fence according to the contract, and have been since about 20 February. We were the manufacturing agents of W. B. Pallett Co. Pallett sent me machinery. I did not have room for it in my factory and put it up outside. I did not tell Dark and Justice in the latter part of February, and after the purchase *Page 214 
of the notes by plaintiff, that I had made no contract with Pallett, and that they could get no fence from there unless Pallett came back and made it. I did tell them that Pallett attempted to make me an (295) agent for the sale of the fence, and that I refused to agree to become such agent for Durham township. I did not tell Justice, about 10 March last, near Farthing's store, at an auction sale of horses, that I had never given Pallett consent for the use of my name, and that I would not furnish any of the fence."
The plaintiff closed his case and the defendant introduced Make Jeans as a witness, who testified: "I live in the town of Durham. The plaintiff came to my store and said he was about to purchase the notes of the defendant, and on C. N. Justice, and asked their financial standing. I told him they were good; that Dark was my step-father. He said the notes had been given for the right to sell wire fence which would be put up by Wortham, Warren 
Co. Pallett had given me $25 for giving him the names of good farmers in Chatham County. I gave him the names of Dark and Justice.
C. N. Justice, a witness for the defendant, testified: "I am the obligor upon one of the notes mentioned. Shortly after the purchase of my note by the plaintiff, I went to see him in Durham. He proposed to sell me my note for $110, and said to me that was what he gave for it. About two weeks after the execution of my note, I went with Mr. Dark to see Wortham, Warren Co. Mr. Wortham told us that there was no fence there, and would not be unless Pallett came back and made it. That he would have nothing to do with it. That he would not let Pallett's machinery come into his house. About 10 March I saw him again near Farthing's store, where there was an auction sale of horses, and he then told me that he had never authorized Pallett to use his name, and that he would furnish no fence. I never went to see about fence again."
J.H. Dark, recalled, testified: "I was with Mr. Justice when he went to see Mr. Wortham. He told us he was going to make no fence; that he would make none; that he would not even let Pallett's machinery come into his house. There was some machinery outside of the (296) house setting on two scantlings about 4 x 4."
The defendant asked his Honor to instruct the jury, that the defendant having pleaded fraud in the inception of the note, and having introduced evidence tending to show fraud, the burden of proof was upon the plaintiff to show that he became the owner of the note before maturity, for value, and without notice of the fraud, and without notice of such facts and circumstances as would stimulate inquiry. His Honor declined to give this instruction, and the defendant excepted.
The defendant asked his Honor to instruct the jury, that if they *Page 215 
should believe that the plaintiff purchased the note sued on, together with four others of the same character, for the sum of $100 each for three notes, and $62.50 for each of two notes; that at the same time one J. F. Slaughter had purchased nine similar notes upon solvent men at the same discount, from the same person, paying $100 each for the notes due in six months for $125 each, that plaintiff knew that the payee was then a stranger in the town in which plaintiff resided; that some of these notes were payable at the Durham Fence Factory; that plaintiff knew that there was no such factory in existence at Durham; that plaintiff made inquiries and ascertained that defendant and others who gave said fourteen notes were all solvent men, except two, for which the plaintiff paid $62.50 each; that the plaintiff knew that all of these notes were given for some sort of a township rights, and knew that they were given for the right to sell wire fence; that he knew that by such right the payees were to have wire fence made by Wortham, Warren Co.; that plaintiff was not a dealer or trader in negotiable paper, then the plaintiff had notice of the fraud and defenses of the defendant. This charge his Honor declined to give, and the defendant excepted.
The defendant asked the court to charge the jury, that if they believed the facts set forth in the preceding prayer, that then the (297) plaintiff had notice of such facts and circumstances as would stimulate an inquiry, and that he is presumed to have notice of all facts which such inquiry would have disclosed. This the court declined to give, and the defendant excepted.
The defendant asked the court to instruct the jury, that if they found the facts as set forth in the preceding instruction but one, that they could be considered by the jury in passing upon the question on notice. This the court declined to give, and the defendant excepted.
His Honor then charged the jury as follows: "The plaintiff having produced the note at the trial, and its execution being admitted, and being negotiable, the law presumes that the plaintiff is the owner; the only question for your consideration, the defendant having pleaded fraud, is, do you believe the statement made by the plaintiff that he paid value, for the note before maturity, and had notice of such fraud or equities; if so, you will answer the issue, `Yes, $125, and interest from 13 August, 1891.'" To which charge the defendant excepted.
There was verdict and judgment for the plaintiff, and appeal by the defendant.
It is insisted for the plaintiff that he purchased the note *Page 216 
for value and without notice; that the note was negotiable, and there is a prima facie presumption of law in favor of every holder of a negotiable note to the extent that he is the owner of it, and that he took it for value, and before dishonor, in the regular course of business, and if there be fraud or illegality in the inception of it, the burden is upon the (298) maker to show it. This proposition is supported by abundant authority, and will not be controverted. But the defendant says that there was evidence tending to rebut this presumption and fix the plaintiff with notice, and that he was not a bona fide purchaser for value and without notice, and that the court erred in refusing to submit this evidence to the jury, and in instructing them that if they believed the statement made by the plaintiff that he paid value for the note before maturity, without notice of any fraud or equities, they should answer the issue "Yes."
Was there any evidence of facts and circumstances within the knowledge of the plaintiff calculated to attract attention and put him upon his guard, and stimulate inquiry as to the character of the note which he purchased? "If so, it is well settled," says Ruffin, C. J., in Bunting v.Ricks, 22 N.C. 130, "that the person is affected with knowledge of all that the inquiry would disclose," and this is reaffirmed in Hulbert v.Douglas, 94 N.C. 122.
We think that the testimony of the plaintiff himself shows facts that should have put him on inquiry. He was careful to make inquiry as to the solvency of the maker of the note. This was prudent; but when he was offered a note by a perfect stranger for $100 made by the defendant, whom he had, upon inquiry, ascertained to be perfectly solvent, for $125, payable six months after date, at a place named in his own town, which he knew to have no existence, and when he knew, as he did, that the note was given "for some sort of a township right," upon some sort of contract, he did not know what, would not ordinary prudence and a proper regard for the rights and interest of the debtor, whom he knew to be solvent, have suggested that he press his inquiry further, and ascertain something about the character of the payee in the note, and why it was made payable at a place which he knew had no existence, as well as to have inquired as to the solvency of the maker of the note? Conceding in favor of the purchaser of negotiable paper before (299) maturity, that the simple fact that the purchased from a stranger who sold for much less than its value, would not be sufficient. There was conflicting testimony, and we think his Honor erred in refusing to submit the question to the jury upon all the evidence. It was error to single out the testimony of the plaintiff and tell the jury that *Page 217 
if they believed his statement they must answer the issue "Yes." Long v.Hall, 97 N.C. 286; S. v. Rogers, 93 N.C. 523, and cases cited.
Error.
Overruled: S. c., 111 N.C. 243; Carrington v. Waff, 112 N.C. 121;Smathers v. Hotel Co., 162 N.C. 351.