EDWARDS v. ATLANTIC COAST LINE RAILROAD CO.

(Filed October 1, 1901.)

1. EVIDENCE—*Sufficiency—Negligence—Railroad Crossing.*

   The testimony of a witness that he did not hear either the whistle or bell at a railroad crossing, he being in hearing distance, is sufficient for the consideration of the jury.

2. INSTRUCTIONS—*Conflicting—New Trial—Trial.*

   Where there are conflicting instructions upon a material point, a new trial must be granted.

3. EVIDENCE—*Incompetent—Railroad Crossing—Railroads.*

   Evidence that a railroad crossing is more dangerous since the construction of the railroad than prior thereto, is not competent on the question of negligence of railroad for killing a person at the crossing.

4. NEGLIGENCE—*Violation of Ordinances—Speed of Running—Railroads.*

   The running of a train at a rate of speed greater than that allowed by law is always evidence of negligence.

5. NEGLIGENCE—*Instructions—Railroads.*

   Where a railroad company is guilty of negligence on account of fast running, it is error to allow the question of negligence to depend upon the failure to give signals.

ACTION by J. W. Edwards, administrator of W. B. Edwards, against the Atlantic Coast Line Railroad Company, heard by Judge *A. L. Coble* and a jury, at May Term, 1901, of the Superior Court of WILSON County. From a judgment for the defendant, the plaintiff appealed.

*Woodard & Mewborn,* for the plaintiff.

*H. G. Connor, George B. Elliott,* and *F. A. Daniels,* for the defendant.

DOUGLAS, J.   This is an action brought by the administra-
tor to recover damages for the death of his intestate, alleged
to have been caused by the negligence of the defendant.

It is admitted that the intestate was killed by the defend-
ant's engine about 2 o'clock in the day time, at a street-cross-
ing within the corporate limits of the city of Wilson; and
that there was an ordinance of said city reading as follows:
"That any engineer of a railroad company who shall run
any train in the city at a speed exceeding ten miles an hour,
or who shall fail to ring the bell while in the city, shall be
subject to a fine," etc.

There was conflicting evidence as to the speed at which
the train was running, and as to whether the whistle was
sounded or the bell rung.

We think that the testimony of a witness that he did not
hear either the whistle or the bell, although in a position
where he might reasonably have heard either, is sufficient
evidence for the consideration of the jury.   It *tends* to prove
that neither the whistle nor the bell was sounded; but whether
it *does* prove it, is for them alone to decide.   The plaintiff
asked the witness this question: "If the public highway had
remained as it was before the construction of the railroad,
if a person driving along the highway could not have observed
the approach of the train more readily than a person travei-
ing along the same highway since the construction of the
crossing made by the defendant railroad?"   This question,
upon objection, was properly ruled out by the Court.   We
are not clear what was meant by the question, but in any
view of it we fail to see its relevancy.   If the plaintiff had
wished to show that the crossing was negligently constructed,
he had the right to do so.   By negligent construction, we
mean such an improper construction of the crossing, whether
arising from negligence, indifference or motives of economy
as *unnecessarily* increases the danger of using the public high-

way. *Raper v. Railroad,* 126 N. C., 563. But the mere fact that a crossing is dangerous does not necessarily impute negligence to the railroad company. All railroad crossings are more or less dangerous, and the mere presence of a railroad near a public highway is necessarily a disturbing element, but the company is not responsible for such inherent danger unless it unnecessarily causes or increases it by some unlawful act, or wilful or negligent omission of duty. It is true that a railroad company might, by a proper construction of its road, render a public highway so dangerous as to demand more than ordinary care in the running of its trains, and it may be that to show this was the plaintiff's object; but even in that view the question was too general.

The plantiff's second exception presents a graver question, and we think must be sustained.

It is well settled that where there are conflicting instructions upon a material point, a new trial must be granted, as "the jury are not supposed to be capable of determining when the Judge states the law correctly and when incorrectly." *Tillett v. Railroad,* 115 N. C., 662; *State v. Fuller,* 114 N. C., 885; *Williams v. Haig,* 118 N. C., 481; *Bragaw v. Supreme Lodge,* 124 N. C., 154. This rule applies where there is actual repugnancy, and where, consequently, one part of the charge is necessarily erroneous, but not to cases where parts of the charge are explained and amplified by other parts thereof, or where an error therein is afterwards corrected in so clear and unmistakable a manner as to leave no possibility of misconstruction by the jury. *Everett v. Spencer,* 122 N. C., 1010.

His Honor charged in part as follows: "If the jury find that the train, at the time it reached the crossing in question, was running at a greater speed than that prescribed by the town ordinance, that the injury would not have occurred, that is, find that but for such rate of speed the injury would

not have happened, then the jury are instructed that this was negligence, and they will answer the first issue 'Yes.' " This charge is correct in so far as it correctly assumes the two requisites for an affirmative finding of the first issue, namely, that the defendant must be guilty of negligence, and that such negligence must have contributed to the injury. In another view it is not correct, because it restricts the consideration of the excessive speed to the actual point of the injury. The negligence consists in running at an unlawful rate of speed within the corporate limits. If a train were running within such limits at an unlawful rate of speed, and in consequence of, such excessive speed could not be stopped in time to prevent injury at the crossing after coming within sight thereof, the company could not free itself from liability simply by showing that the train was running less than ten miles an hour when it reached the crossing. The object in limiting the speed where accidents are liable to occur, is to keep the train within the control of the engineer, so as to enable him to stop in time to prevent such accidents after he discovers the danger.

His Honor had previously charged as follows: "If the jury find that the defendant's train approached the crossing in question without sounding the whistle and without ringing the bell, and struck and killed the plaintiff's intestate, then the jury are instructed that the defendant was guilty of negligence, and you will answer the first issue 'Yes.' " This instruction was erroneous because, the killing being admitted, it made the answer to the first issue depend entirely upon the failure to sound the whistle or ring the bell. If the issue had been simply as to the negligence of the defendant, this instruction would have been correct, but such was not the issue. It was as follows: "Was the plaintiff's intestate killed by the negligence of defendant?" This issue involved two

propositions, first, the existence of such negligence; and, secondly, its relation to the injury. The negligence of the defendant, no matter how great, would not of itself have rendered it liable in damages unless it had contributed to the death of the plaintiff's intestate; while, on the other hand, the mere killing would not have been actionable unless caused by some unlawful act, or the negligent or wilful omission of some legal duty on the part of the defendant. This instruction, being favorable to the appellant, is not excepted to; but we deem it proper to discuss it in view of our comments on the general effects of the entire charge.

Again, his Honor charges that "the rate of speed at which the train was running would not be negligence or *evidence of negligence,* unless the jury find that if the train had been running within the limits prescribed by the town ordinance, to-wit, not more than ten miles an hour, the injury would not have occurred." This instruction is in conflict with those quoted above, and is clearly erroneous as well as prejudicial to the plaintiff. If the excessive speed was not even evidence of negligence, it would make no difference if it did cause the death of the intestate. A train may, without negligence, kill a man simply because, owing to its high speed, the engineer was unable to stop in time after discovering the danger; and yet the company would not be liable unless such speed were negligent or unlawful.

A rate of speed greater than that allowed by law is always at least evidence of negligence, and, under certain circumstances may become negligence *per se.* *Norton v. Railroad,* 122 N. C., 910, 927. In *Railway v. Ives,* 144 U. S., the Court says on page 418: "Indeed, it has been held in many cases that the running of railroad trains, within the limits of a city, at a rate of speed greater than is allowed by an ordinance of such city, is negligence *per se* (citing authorities). But perhaps the better and more generally accepted rule is

EDWARDS *v.* RAILROAD.

that such an act on the part of the railroad company is *always* to be considered by the jury as at least a, circumstance from which negligence may be inferred, in determining whether the company was or was not guilty of negligence." In the same case the Court says on page 417: "What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence."

The defendant urges in support of this instruction that it was copied from one given by the Court below in *Norton v. Railroad, supra.* This appears to be true, but it does not appear that it was approved by this Court. As it was favorable to the then appellant, it was not under exception, and was therefore not material. In that case this Court says, on page 933: "They (the defendant's prayers) were given to a large extent in the charge, fully as much so as the defendant could rightfully ask. In fact, it is questionable whether some parts that were given could stand the test of exception, but that is not now before us."

The relative rights, duties and responsibilities of a railroad company and a traveller crossing its track on the highway, are fully discussed in *Norton v. Railroad, supra,* and *Continental Improvement Co. v. Stead,* 95 U. S., 161.

There were some other exceptions as to the Court's singling out a certain witness, but it is unnecessary to discuss them, as it may not occur upon a new trial, and is not material now.

For error in the charge, there must be a

New trial.