FRASIER v. GIBSON.

(Filed December 12, 1905).

*Cherokee Lands—Terms of Entry—Payment—Forfeitures— Indefiniteness of Entry — Burden of Proof — Statute of Limitations.*

1. The manner of entry, terms of payment, etc., of the "Cherokee Lands" are governed by the provisions of chapter 11 of The Code, and section 2766 of chapter 17, providing that the failure to pay the purchase money, within the time prescribed after entry, works a forfeiture, does not apply to the Cherokee Lands.

2. The terms upon which the "Cherokee Lands," when entered, revert to the State, are "in case of failure to pay the whole when due and the money cannot be obtained by judgment" on the bonds, and the enterer has a reasonable time within which to pay his bonds and assert his right.

3. A status is established between the State and an enterer of the Cherokee Lands by which he becomes a purchaser; the enterer of other lands acquires a mere option to buy.

4. Under chapter 11 of The Code, when one entered the "Cherokee Lands," on December 11, 1879, and filed his bonds for the purchase money on February 20, 1880, and paid same December 1, 1884, and obtained grant on August 17, 1885, *held*, the entry had not lapsed.

5. Forfeitures are not favored by the law and when incurred can only be enforced in the manner pointed out in the contract to enforce them.

6. The burden is upon the plaintiff to show that a prior entry was invalid for indefiniteness, for in the absence of any proof to the contrary, the court must assume that the entry and survey conformed to the statute.

7. In an action by one who claims as enterer of "Cherokee Lands," the cause of action is barred in ten years from the registration of the grant.

ACTION by W. W. Frazier against Franklin Gibson and others, heard by *Judge G. S. Ferguson* and a jury, at the July Term, 1905, of the Superior Court of SWAIN. From a judgment for the defendants, the plaintiff appealed.

*Fry & Rowe* for the plaintiff.
*Bryson & Black* for the defendants.

CONNOR, J.  This action was disposed of by His Honor below upon a demurrer *ore tenus* to the complaint which disclosed the following facts:  On December 11, 1879, defendant J. D. S. McMahan entered in the office of the entry taker of Swain County, 640 acres of land on the waters of Ocona Lufty River in said county, said entry being No. 826; he filed his bonds for the purchase money on the 20th day of February, 1880, and paid same on the first day of December, 1884, obtaining grant numbered 7,294, on August 17, 1885.

On March 15, 1880, one S. Everett, without notice of the McMahan entry, entered in the entry taker's office of said county eight tracts of 640 acres each and filed his bonds for same as required by law.  A portion of such entries cover the entry made by McMahan as aforesaid.  Said Everett assigned said entries to one D. Lester, who paid the purchase money on June 27, 1883, and took grants for said lands on November 4, 1891—a portion of said grants covering the aforesaid McMahan entry and grant.  The defendants Gibson and others claim the land entered by McMahan by virtue of conveyances therefor.  The plaintiff is the owner of such right and title as Lester obtained under the grant issued to him.  Defendant Frank Gibson is in the possession of said land.  That said land is located in that portion of the State to which the statute in regard to the Cherokee lands applies.  Plaintiff demanded judgment that the defendants be declared to hold the legal title to said land in trust and that they be decreed to convey the same to him.  Defendants, among other defenses,

140—18

pleaded the statute of limitations. When the cause came on for trial, defendants relied upon the statute of limitations as a bar to the plaintiff's action and further demurred *ore tenus* to the complaint for that it failed to state facts sufficient to constitute a cause of action and that he was not entitled to the relief prayed for. The court sustained the demurrer and dismissed the action, from which plaintiff appealed.

The defendants claim title, under a senior grant issued upon a senior entry, by which they have a perfect title from the State unless, for the reason assigned by plaintiff, the entry made by McMahan had lapsed at the date of the grant issued thereon. He contends that by McMahan's failure to file the bonds at the time of making the entry and paying them within four years thereafter, the entry, with such rights as accrued therefrom, was forfeited. It will be noted that the entry was made on December 11, 1879—the bonds filed February 20, 1880, and paid December 1, 1884. If, as contended by the plaintiff, the bonds should have been filed within four years from that date, then more than that period elapsed before their payment. If, as contended by defendants, the enterer had three months within which to file them, the same result in respect to time follows, it is therefore immaterial which view we take of that question.

The question is therefore fairly presented whether the failure to make full payment within four years from either date, works a forfeiture of the entry—so that the legal title which vested by the grant is impressed with a trust for the benefit of the Everett entry. This contention is the basis of the plaintiff's action. When we refer to chapter 17 of The Code relating to "Entries and Grants," it is clear that by the express terms of section 2766, which was in force at the date of both entries (Rev. Code, chap. 42), the failure to pay the purchase money within the time prescribed, after entry, works an absolute forfeiture of the entry or, in the language of the statute,

"All entries of land not thus paid for shall become null and void and may be entered by any other person."

The lands in controversy are a portion of the "Cherokee Lands" and in respect to the manner of entry, terms of payment, etc., are governed by the provisions of chapter 11 of The Code. The plaintiff contends that the same rule prevails in regard to the failure to pay the purchase money when due— as in case of other public lands. If he is correct in this, and the McMahan entry of December 11, 1879, lapsed by reason of the failure to pay the bonds when due, then upon the authority of the uniform decisions of this court the entry of Everett of March 15, 1880, followed by the payment of the bonds on June 27, 1883, entitles the plaintiff, succeeding to his rights, to have the defendants claiming thereunder, declared trustees for his benefit and decreed to convey to him the legal title. *Gilchrist v. Middleton,* 107 N. C., 663, in which the authorities are cited.

The defendants, however, contend that no language can be found in chapter 11 of The Code declaring a forfeiture of an entry by reason of the failure of the enterer to pay the purchase money within the prescribed period. This contention invites us to an examination of the statutes compiled in and constituting chapter 11 of The Code, entitled "Cherokee Lands." Without entering into a discussion of this interesting subject by referring in detail to the several statutes enacted by our General Assembly beginning with the Act of 1783, it is sufficient, with some slight exceptions, to the decision of this appeal to note that at the session of 1852 an act was passed, being chapter 119, Code, section 2464, *et seq.,* providing for the entry and purchase of such portions of the Cherokee lands, as had not been sold pursuant to preceding statutes. After providing for the appointment of an entry taker and a scale of prices regulated by the date of entry, it was provided: "It shall be lawful for all persons entering lands in said county of Cherokee to file their bonds, with

approved security, with the entry taker, payable to the State
in four equal annual installments which shall, when paid, be
in full of the purchase money of the tract or tracts so entered,
and, upon proof of such payment as herein provided, the Sec-
retary of State shall issue a grant or grants according to
the entry and survey thereon," etc.   Section 2466.   By the
same statute, Code, section 2468, it is provided that all money
received from the sale of vacant lands in the counties of
Cherokee, Macon and Haywood, shall be paid to contractors
for making the Western Turnpike Road, etc.   The remain-
ing sections of this act provide for the construction, etc., of
this turnpike.   At the same session, by chapter 120, section 2,
Code, section 2476, it is made the duty of the agent appointed
for the collection of the bonds to proceed to collect by suit or
otherwise and pay the proceeds over as directed.   It will be
observed that nothing is to be found in the Act of 1852, chap-
ter 119 and chapter 120, as incorporated in The Code, declar-
ing the effect, upon the rights of the enterer, of a failure to
pay the bonds at maturity.   We find, however, that in other
acts relating to the sale of these lands, it is expressly provided
that no grant shall issue until the entire amount of the pur-
chase money is paid.   A careful examination of the legisla-
tion upon the subject of the Cherokee lands discovers on the
part of the State a policy in respect to them different from
that adopted in regard to other vacant and unappropriated
lands.   Prior to 1819 no part of the lands described in sec-
tion 2346 of The Code (Act 1783) was subject to entry.
By Act 1819 provision was made for surveying such portion
of said land as was acquired by treaty with the Cherokees and
selling, parts of it, at public auction, etc., entries were forbid-
den and declared void.   Purchasers were required to pay one-
eighth part of the purchase money in cash and to execute
bonds with security for the remainder—payable in install-
ments.   No grant was to issue until the amount was paid in
full, "and in case of failure to pay the whole when due and

the money cannot be collected by a judgment on the bond, then the land shall revert to the State and be liable again to be sold for the benefit of the State." Section 2356.

In 1836 legislation looking to further sales of the Cherokee lands by commissioners, etc., was enacted. Section 2402 (Act 1836) makes the same provision for collecting the bonds as *section 2356*. Provision is made in several other acts for bringing suit on the bonds, etc. It was not until 1852 that any portion of these lands were open to entry and then, as we have seen, the enterer was required to give bond with security, etc.

Reverting to the legislation regarding other public lands, we find an entirely different plan and policy outlined. Subject to certain exceptions, any citizen of the State may enter the public lands as provided by statutes enacted at different dates and incorporated in chapter 17 of The Code. By the provisions of these statutes no contract is entered into with the State to buy the land entered nor does the State assume any other obligation than to secure to the enterer a right or option to pay the amount and call for a grant within the period fixed. In *Hall v. Hollifield,* 76 N. C., 476, it is said: "The public lands of the State are open to entry by any of its citizens, and the first declaration of intention is made on the books of the entry taker in the county where the land lies, and this gives priority, called a pre-emption right. No estate or interest in the land is thereby acquired. No consideration is paid and none of the requisites for that purpose are performed, but simply the right to be preferred when the money is paid and the other formalities required by the statute complied with." A mere enterer is not entitled to an injunction to restrain another claimant from cutting timber. *Newton v. Brown,* 134 N. C., 439. A status is established between the State and an enterer of the Cherokee lands by which he becomes a purchaser; the enterer of other lands acquires a mere option to buy. In the first instance, he enters into a

contract with the State obligating himself, with approved security, to pay for the land, in four equal annual installments—giving his bond therefor—in the other he is a mere proposer assuming no obligation and acquiring no other right than a preferred bidder—an option to take the land or not as he sees fit, or as it may be to his interest. This difference shows clearly why the language of section 2766 is not found in any of the statutes relating to the sale of the Cherokee lands. The relation in respect to the purchase of these lands between the State and the enterer or purchaser, is that of vendor and vendee, with all of the rights and equities incident thereto. The distinction between the several statutes is recognized by this court in *Kimsey v. Munday,* 112 N. C., 816. In that case it is said by *MacRae, J.,* that the enterer should within a reasonable time pay the bonds and call for his grant, or he would be presumed to have abandoned his claim. No time was fixed by the court; it was held that thirty years was unreasonable.

It would seem that by analogy to contracts between individuals, the period fixed by The Code, ten years, would be reasonable. We are therefore of the opinion that by a correct construction of chapter 11 of The Code, considering it as one act, the entry made by McMahan, under which defendants claim, had not lapsed at the date of the grant. The terms upon which the land would revert to the State are stated in the statute to be "in case of failure to pay the whole when due and the money cannot be obtained by judgment on their bonds." This condition could not have existed because within a short time after maturity, the bonds were paid. Forfeitures are not favored by the law, and when incurred can only be enforced in the manner pointed out in the contract to enforce them. The plaintiff insists that notwithstanding this view he is entitled to relief because the demurrer admits that Everett had no notice of the McMahan entry when he made his entry. We understand the allegation to be that he had no actual or express

notice, because upon the facts alleged the entry followed by the survey was constructive notice. Neither the entry nor grant are in evidence. The plaintiff's counsel, in his well considered brief, says that the entry is too indefinite to constitute notice. We are not able to say how this is—but in the absence of any proof to the contrary, we must assume that the entry and survey conformed to the statute in this respect. The burden was upon the plaintiff to show that the entry was invalid for indefiniteness. The defendants pleaded the statute of limitations, which we held in *Ritchie v. Fowler,* 132 N. C., 788, barred an action of this kind in ten years from the registration of the grant. The question has been again discussed before us at this term, and that case, after full consideration, approved. *McAden v. Palmer,* at this term.

The grant under which defendants claim was issued and recorded in 1883. This action was instituted January, 1903. This is a striking illustration of the wisdom of the statute. The welfare of the State demands that within a reasonable time titles to land shall be protected from litigation. For some reason the plaintiff waits nearly eighteen years after the public records give him notice that the defendants' grantor have a grant from the State for this land. Viewed from either aspect, we concur with His Honor that the plaintiff cannot recover.

The judgment must be
Affirmed.