A. I. ANDERSON v. EMLUS MEADOWS AND ED. BYRD.

(Filed 28 May, 1912.)

1. Instructions, Confusing—Appeal and Error.

When the instructions of the court to the jury are erroneous in part, and so blended with those that are proper that the Court cannot tell how the jury was influenced by them in rendering their verdict against the appellant, a new trial will be awarded.

2. State's Lands—Cherokee Indian Treaties—Entry—Vacant Lands —Interpretation of Statutes.

The lands acquired by the State by the treaties with the Cherokee Indians in 1817 and 1819 were made subject to entry by the

ANDERSON *v.* MEADOWS.

act of 1852 only when vacant, or not previously sold under the
Cherokee land statutes; and hence an entry made of lands re-
quired by the act of 1819, chap. 997, to be sold is invalid, and
a subsequent purchaser of the same lands under the provisions
of the act acquires the title.

3. **Same—Instructions.**

The lands in dispute in this action were a part of the Cherokee
Indian lands acquired by the State under the treaties of 1817
and 1819. The defendant deraigned his title through one who
purchased them in 1820, under the act of 1819, and obtained his
grant in 1864. The plaintiff claimed under a grant made in 1862
on an entry made in 1859: *Held*, an instruction which made the
controversy to rest upon the question of the seniority of the
grants was erroneous, the land not being vacant and subject to
entry at the time of the entry made by the plaintiff.

4. **State's Lands—Cherokee Indian Treaties—Vendor and Vendee—
Interpretation of Statutes.**

One who acquired a part of the Cherokee Indian lands under
the act of 1819 did so by purchase, establishing the relationship
of vendor and vendee between the State and himself.

5. **State's Lands—Void Entry—Collateral Attack.**

An entry upon the State's lands which are not vacant at the
time is void, and may be attacked collaterally.

6. **State's Lands—Entry—Limitation of Actions.**

It appearing in this case that a part of the Cherokee Indian
lands, the subject of the controversy, had been sold under the
act of 1819, prior to the time of entry and grant under which
the plaintiff claimed, it is *Held*, that the plaintiff's right is not
barred by the statute of limitation pleaded. *Ritchie v. Fowler*,
132 N. C., 788, distinguished.

APPEAL by defendants from *Webb, J.*, at the Fall Term, 1911,
of MACON.

The facts are sufficiently stated in the opinion of the Court
by *Mr. Justice Walker.*

*Robertson & Benbow for plaintiff.*
*Johnston & Horn for defendants.*

WALKER, J. This is an action for the recovery of land.
Plaintiff claimed title under a grant (No. 2596) issued to Jacob
Shope in 1862, upon an entry made by him in 1859, and the

will of Jacob Shope devising the land to her.   Defendants claimed under a purchase made by Clark Byrd from the State, under the act of 1819, providing for the sale of the lands acquired by treaties with the Cherokee Indians of 1817 and 1819. They connected themselves with Byrd by mesne conveyances. A grant was issued by the State to Clark Byrd, as purchaser, in 1864, and recites the fact that the tract is a part of the land acquired by treaty from the Cherokee Indians and sold under the provisions of the act of the General Assembly to Clark Byrd, who had paid the purchase money.   The grant of Jacob Shope recites the fact that the tract therein described is a part of the land acquired by treaty from the Cherokee Indians and sold under the act of the General Assembly aforesaid, but it does not state that it was bought by Jacob Shope, but that he entered it.   Both grants were duly registered, and it was admitted that they covered the land in dispute.   It was also admitted that the land described in the grant to Clark Byrd, No. 2934, was Section No. 11, District No. 17, in Macon County, acquired by treaty from the Cherokee Indians, surveyed by the State in 1820 and bought at a sale made by the commissioner for the State, by Clark Byrd, to whom the said grant issued in accordance with the statute concerning the sale of Cherokee lands.   And the grant which was issued to Jacob Shope in 1859 upon his entry was for the same land as that described in the grant issued to Clark Byrd.

The court charged the jury that if they found as a fact that the plaintiff, Mrs. Anderson, is the same person to whom the land was devised by Jacob Shope, the plaintiff would be entitled to recover the *locus in quo,* as the grant to Jacob Shope was issued more than two years before the grant was issued to Clark Byrd, under whom the defendants claim.   The court, therefore, made the plaintiff's right to recover depend solely upon the seniority of the grant to her father, who devised it to her.   All of the charge is not set out, but whatever else the judge may have said to the jury, and however correct it may have been, if there was error in the instruction as to the grants, there must be a new trial, as the instructions were so blended that we cannot tell which one influenced the jury to give their verdict for the

plaintiff. *Tillett v. R. R.,* 115 N. C., 663; *Edwards v. R. R.,* 129 N. C., 80. The instruction as to the grants was erroneous. It appeared upon the face of both that the land which plaintiff's father had entered, and upon which his grant was issued, was not the subject of entry, as the act of 1852 only authorized the entry of those Cherokee lands which were then vacant, and lands which had been sold by the State no longer belonged to it, and were not, therefore, vacant and subject to entry. By his purchase at the sale which was made pursuant to the statute, the grantee, Clark Byrd, acquired, not a mere option, such as an enterer under the general law would get by his entry, but the right or interest of a purchaser, the relation being that of vendor and vendee. The act of 1852, under which Jacob Shope made his entry, permitted an entry only of those lands when vacant or which had not been previously sold under the Cherokee land statutes. *Frasier v. Gibson,* 140 N. C., 275; Acts of 1852, chap. 119; Code, chap. 11. As it appears that the land in dispute had already been sold, it was not the subject of entry, and any grant issuing upon such an entry is void. The case cannot be distinguished from *Harshaw v. Taylor,* 48 N. C., 513. In that case the facts were that plaintiff made an entry of the *locus in quo* in 1852. The defendant purchased the same from the Indian land commissioners, under the acts of 1836-7, it being Cherokee land.

Referring to the right to attack a grant collaterally, and stating that it depends upon whether the jurisdiction of the officer to issue it is general or special, *Judge Pearson* said: "Upon these two distinctions our case is easily disposed of. The act of 1852 confers a *general* authority. It extends to all unsold land at a fixed price per acre. But it was properly admitted by the plaintiff's counsel that the grant to him could not be supported by the aid of that statute (act of 1852); (because) the statute only authorizes the entry and grant of vacant and *unsold* land, whereas the land in controversy had been previously surveyed and sold according to the provisions of the statutes in reference to land lying in the county of Cherokee." Speaking to a like question, *Justice Connor* said in *Janney v. Blackwell,* 138 N. C., 437: "The statutes in force in this State for more than a

century have permitted 'all vacant and unappropriated lands be-
longing to the State,' with certain well-defined exceptions, to be
entered and grants taken therefor. Code, sec. 2751. 'To be
subject to entry under the statute, lands must be such as belong
to the State and such as are vacant and unappropriated.' *Hall
v. Hollifield,* 76 N. C., 476; *S. v. Bevers,* 86 N. C., 588. By.
making the entry as prescribed by law, the enterer does not
acquire any title to the land, but only a 'preëmption right,' or,
as it is sometimes called, an 'inchoate equity' or right to call
for a grant upon compliance with the statute. The grant,
when issued, relates to the entry and vests the title in the
grantee. The land when granted is no longer subject to entry
as 'vacant and unappropriated lands.' *Featherstone v. Mills,*
15 N. C., 596; *Hoover v. Thomas,* 61 N. C., 184; *S. v. Bevers,
supra; Newton v. Brown,* 134 N. C., 439. . It follows, therefore,
that if one lay an entry upon and procure a grant for land
covered by a grant, he acquires no title thereto, for the reason
that the State has by the senior grant parted with its title.
*Stanmire v. Powell,* 35 N..C., 312. If the land be open to
entry, and a grant be issued therefor, such grant may not be
attacked collaterally for fraud, irregularity, or other cause.
This can be done only by the State or by pursuing the provi-
sions of section 2786 of The Code. But if the land be not sub-
ject to entry, the grant is void, and may be attacked collater-
ally."

We think, therefore, that the instruction of the court was
erroneous.

There were questions discussed as to the statute of limita-
tions, with special reference to the bearing of *Ritchie v. Fowler.*
132 N. C., 788; *Frasier v. Gibson, supra,* upon the case; but
the facts of those cases and this one are not alike. In the two
former cases there was a conflict between entries made under
the act of 1852 and subsequent modifying statutes, while in this
case the land had been sold under the act of 1819 and subse-
quent enabling statutes, and was, therefore, not the subject of
entry under the other acts mentioned. Whether Clark Byrd
complied with the statute is a question not presented. He paid

the purchase money, though it does not appear when it was paid, if that be material. *Kimsey v. Munday,* 112 N. C., at p. 830, citing *Gilchrist v. Middleton,* 108 N. C., 705.

With the facts now before us, we are of the opinion that there was error in the instruction given to the jury.

New trial.