J. L. SMATHERS & CO. ET AL. v. TOXAWAY HOTEL COMPANY ET AL.

(Filed 22 May, 1913.)

1. Negotiable Instruments—"Value"—Interpretation of Statutes.

A holder of a negotiable instrument for value is one who acquired the instrument for a consideration sufficient to support a simple contract, such as an antecedent or preëxisting debt; or a lien on the instrument arising either from contract or by implication of law, to the extent of the lien. Revisal, secs. 2173, 2175.

2. Negotiable Instruments—Infirmity—"Notice"—Interpretation of Statutes—Instructions—Appeal and Error.

To constitute notice of infirmity of a negotiable instrument, the holder or transferee for value before maturity must have had actual knowledge thereof or of such facts that his action in taking it amounted to bad faith; and notice that would put a reasonably prudent man upon inquiry is insufficient (Revisal, sec. 2205); and a charge to the jury will be held for reversible error that lays down for the guidance of the jury the incorrect as well as the statutory rule of the sufficiency of the notice required.

3. Instructions—Appeal and Error—Favorable to Appellant—Harmless Error.

The appealing party cannot complain of error in a charge of the court which is in his own favor.

APPEAL by defendants from *Foushee, J.,* at November Term, 1912, of BUNCOMBE.

Civil action in nature of creditor's bill. The relevant facts are very correctly stated in one of the briefs as follows:

"On 13 November, 1906, the Toxaway Hotel Company executed a bill of sale conveying to R. A. Jacobs certain merchandise, cattle, and other personal property in Transylvania and Jackson counties; on the said day said Jacobs executed to the

Toxaway Hotel Company, as payment for said property, fourteen (14) notes of $500 each, one payable each successive three months thereafter, and at the same time said Jacobs executed a deed of trust to the Wachovia Bank and Trust Company whereby it conveyed all of said property as security for the payment of said purchase-money notes, which deed in trust was duly registered in Transylvania and Jackson counties, respectively, on 20 and 26 November, 1906.

"On 16 November, 1906, the Toxaway Hotel Company indorsed four of said notes to McMichael & Co.; and on the same day said Toxaway Hotel Company indorsed five of said notes to Frank & Co., of Savannah, as collateral security for a debt of about $2,500, which it owed to said Frank & Co. The first two notes falling due were paid by Jacobs, one of them being held by Frank & Co. On 6 June, 1907, the plaintiffs herein— general creditors of the Toxaway Hotel Company—instituted this action, alleging that the sale to Jacobs, and execution of the notes and deed in trust by him, were done for the purpose of hindering, delaying, and defrauding creditors, and the property in the hands of Jacobs was attached, and the appointment of a receiver of said property was procured by the creditors, who took charge of the same.

"The Toxaway Hotel Company answered, denying the allegations of fraud, and alleging that the sale to Jacobs was *bona fide*.

"The Wachovia Bank and Trust Company, by permission of the court, intervened at the request of McMichael & Co. and Frank & Co., holders of some of the notes as aforesaid, and asked possession of the property held by the receiver, in order that it might enforce the lien of said deed in trust. The plaintiffs, creditors of the Toxaway Hotel Company, resisted, alleging that McMichael & Co. and Frank & Co. were not innocent purchasers. McMichael & Co. and Frank & Co., by order of court, also became intervenors, and alleged that they had taken the notes held by them in the usual course of business, before maturity, in good faith and for value, and had no notice or knowledge of any fraud in connection with the execution thereof.

."The plaintiffs, creditors of the Toxaway Hotel Company, replied that the transfer of the notes to McMichael & Co. and Frank & Co. was a part of the original scheme of the Toxaway Hotel Company to hinder, delay, and defraud its other creditors, and that if McMichael & Co. and Frank & Co. did not have actual knowledge of this fraudulent purpose and intent of said Toxaway Hotel Company and said Jacobs, said transfer of the notes to them was made 'under such circumstances and with knowledge of such facts and circumstances on the part of said alleged transferees as would and ought to lead a reasonably prudent and careful man to discover the wrongful and fraudulent intent of the parties so transferring the same.'

"By consent of all the parties, the receiver, under order of the court, sold the property taken into possession and is holding the proceeds pending the results of this action."

The jury rendered the following verdict:

1. Is the Toxaway Hotel Company indebted to the plaintiffs, as alleged in the complaint? Answer: Yes.

2. Were the bill of sale, deed of trust, and notes dated 13 November, 1906, mentioned in the pleadings in this cause, and executed between Toxaway Hotel Company and R. A. Jacobs, made and executed with·intent to hinder, delay, or defraud the creditors of the Toxaway Hotel Company? Answer: Yes.

3. Are the intervenors, J. C. McMichael, Incorporated, innocent purchasers for value and without notice of said fraud of the notes mentioned in paragraph 7 of the plea of intervention filed herein? Answer: No.

4. Are the intervenors, Frank & Co., innocent purchasers for value and without notice of such fraud of the notes described in paragraph 8 of the plea of intervention filed herein? Answer: No.

Judgment on the verdict for plaintiffs. Defendants excepted and appealed.

*J. C. Martin, C. W. Malone, and W. R. Whitson for plaintiff.
Bourne, Parker & Morrison for defendant intervenors.*

HOKE, J. Our statute on negotiable instruments, Revisal, ch. 54, sec. 2205, makes provision as follows: "To constitute

notice of an infirmity in the instrument or defect in the title
of the person negotiating the same, the person to whom it is
negotiated must have had actual knowledge of the infirmity or
defect or knowledge of such facts that his action in taking the
instrument amounted to bad faith."

A perusal of the record will disclose that the court below, on
the third and fourth issues, at first charged the jury in sub-
stantial accord with the statute. The only criticism suggested
is that, having been given in the exact language of one of de-
fendant's prayers for instructions, it is couched in terms too
persuasive, in view of the conflict of evidence on the subject;
but such an objection is not open to the appellant, for the
error here, if one existed, is in defendant's favor. In a later
portion of the charge, however, and more than once his Honor,
on these issues, stated, in effect, the correct rule to be that, if
the jury should find that there was fraud in the execution of
the notes and that these creditors "had notice of the fraud, or
had notice of any facts or circumstances which ought to have
put a reasonably prudent man upon inquiry, and if they had
made such inquiry they could have discovered the fraud or
the facts or circumstances constituting the same, and they failed
to make such inquiry and discovery, it would be the duty of the
jury to answer the issue 'Yes.'"

This position, in our opinion, is in direct conflict with the
statutory provision, as expressed in the first portion of his
Honor's charge, and must be held for reversible error. *Ander-
son v. Meadows,* 159 N. C., 404. The question as to what is
the character of notice required to affect the status of one
claiming to be the holder in due course of a negotiable instru-
ment has been subject to some fluctuation in the courts and
has given rise to much contrariety of decision. As shown in
the learned and suggestive argument and brief with which we
were favored by counsel for appellant, the doctrine for a time
prevailed in England as it is laid down by his Honor in the
latter portion of his charge; that is, that the holder was put
upon inquiry by facts or circumstances which would induce a
cautious and prudent man to make one, and was affected by
notice or knowledge of conditions which such inquiry would

disclose. This seems not to ·have been the rule as it first obtained in the English courts, and later they returned to the original position, and it has been long firmly established there that, in this respect, the title of the holder can only be impugned by showing direct knowledge of the infirmity or notice of such facts as would make the acquisition of the instrument amount to bad faith. 2 Randolph on Commercial Paper (2d Ed.), sec. 996 *et seq.;* Norton on Bills and Notes (3d Ed.), 319; Huffcut on Negotiable Instruments, pp. 29 and 400-417.

In Huffcut, p. 29, a succinct account of the varying phases of the doctrine is given in a citation from Chalmers Bills of Exchange Act, as follows: "The test of *bona fides* as regards bill transactions has varied greatly. Previous to 1820 the law was much as it now is under the act. But under the influence of Lord Tenterden due care and caution was made the test (*Gill v. Cubitt,* 5 D. and R., 324), and this principle seems to be adopted by section 9 of the Indian Act. In 1834 the Court of King's Bench held that nothing short of gross negligence could defeat the title of a holder for value. (*Cook v. Jadis,* 5 B. and Ad., 909.) Two years later Lord Denman states it as setttled law that bad faith alone could prevent a ·holder for value from recovering. Gross negligence might be evidence of bad faith, but was not conclusive of it. (*Goodman v. Harvey,* 4 A. and E., at p. 876; *Uther v. Rich,* 10 A. and E., 784.) This principle has never since been shaken in England, and it seems now firmly established in the United States. (*Murray v. Lardner,* 2 Wallace, at p. 121; *Chapman v. Rose,* 56 N. Y., at p. 140)," and, in Norton, *supra,* p. 319, the author, after laying down the rule as it temporarily prevailed in England, says: "But this doctrine the law merchant rejects, and it is now the rule of the law merchant that mere knowledge of any facts sufficient to put a reasonably prudent man on inquiry is not sufficient, but that, to defeat his claim to be a *bona fide* holder in due course, he must be guilty of bad faith." There · has been conflict of decision in this country, but we think the position requiring that bad faith be shown or notice or knowledge of facts from which bad faith in taking over the instrument could be reasonably inferred, has been long recognized

here by the great weight of authority. *Hotchkiss v. National Banks,* 21 Wallace, 354; *Goodman v. Simonds,* 20 Howard, 343; *Bank v. Weston,* 161 N. Y., 521; *Bank v. Savery et al.,* 127 Mass., 75; *Bradwell v. Prior,* 221 Ill., 602; *Bank v. Morgan,* 195 Pa. St., 199; *Richards v. Monroe,* 85 Iowa, 359; *DeVoss v. Richmond,* 18 Grattan, 338, etc.; *Tescher v. Mercer,* 118 Ind., 586; *Hamilton v. Vought,* 34 N. J. L., 187. Speaking to the rule, in this last case, and the reason for it, *Chief Justice Beasley* has well said: "From this brief review of the cases, I think it may be safely said that the doctrine introduced by Lord Tenterden stands at the present moment marked with the disapproval of the highest judicial authority. Nor does such disapproval rest upon merely speculative grounds. That doctrine was put in practice for a course of years, and it was thus, from experience, found to be inconsistent with true commercial policy. Its defect—a great defect, as I think—was that it provided nothing like a criterion on which a verdict was to be based. The rule was, that to defeat the note, circumstances must be shown of so suspicious a character that they would put a man of ordinary prudence on inquiry; and by force of such a rule it is obvious every case possessed of unusual incidents would, of necessity, pass under the uncontrolled discretion of a jury. An incident of the transaction from which any suspicion could arise was sufficient to take the case out of the control of the court. There was no judicial standard by which suspicious circumstances could be measured before committing them to the jury. And it is precisely this want which the modern rule supplies. When *mala fides* is the point of inquiry, suspicious circumstances must be of a substantial character, and if such circumstances do not appear, the court can arrest the inquiry. Under the former practice, circumstances of slight suspicion would take the case to the jury; under the present rule, the circumstances must be strong, so that bad faith can be reasonably inferred."

Our own Court has not escaped the perplexities which seem to have attended the subject, as indicated by the case of *Farthing v. Dark,* 109 N. C., 291, reviewed on appeal and disapproved in case, same title, 111 N. C., 243; and these and other

cases with us, as in *Hulbert v. Douglas,* 94 N. C., 122, give countenance to the position of "putting a prudent man upon inquiry." But whatever may be the correct estimate of our former decisions, we regard the matter as put at rest by the express language of the statute: "That to constitute notice of infirmity, etc., the holder must have had actual knowledge of the infirmity, or knowledge of such facts that his action in taking the instrument amounted to bad faith," and are of opinion that the law, by correct interpretation, was designed and intended to establish on this subject and in this jurisdiction the rule as it has been long recognized in England and sustained in this country as stated by the great weight of authority. As a legal proposition, the same statute justifies defendants in making the claims that they are purchasers for value. Section 2173, providing that: "Value is any consideration sufficient to support a simple contract. An antecedent or preexisting debt constitutes value and is deemed such whether the instrument is payable on demand or at a future time" (*McMichael's case*), and section 2175: "Where the holder has a lien on the instrument arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien" (*Frank & Co.'s case*), and on the facts as they now appear of record, the determination of the third and fourth issues were very properly made to depend on whether these creditors held without knowledge or such notice of the alleged infirmity as the law requires to affect their title. Randolph Commercial Paper, sec. 1892; *Carpenter v. Longan,* 83 U. S., 271; *Canon v. McDaniel,* 46 Texas, 300; *Logan v. Smith,* 62 Mo., 455; *Updegraft v. Edwards,* 45 Iowa, 513.

For the error indicated, there must be a new trial of the cause upon all of the issues, and it is so ordered.

New trial.