## S. B. HOLLEMAN v. HARNETT COUNTY TRUST COMPANY AND UNION TRUST COMPANY.

### (Filed 21 February, 1923.)

**Bills and Notes—Negotiable Instruments—Equities—Notice—Inquiry—Bad Faith—Statutes.**

The principle that holds an endorsee of a negotiable instrument subject to the equities existing between the original parties when the instrument is affected with fraud or infirmity is now fixed by statute, C. S., 3033, 3037; and it is now required, however conflicting the former authorities may have been, that "the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith"; and it is reversible error for the judge to charge the jury, in effect, that he would be bound by the original equities if he had such notice as would induce a prudent man to inquire into the circumstances and discover the defect.

APPEAL by defendant Union Trust Company from *Devin, J.,* at second April Term, 1922, of WAKE.

On 30 March, 1920, the plaintiff signed four promissory notes, each in the sum of $2,500, payable to himself twelve months after date, and negotiated them to the Cumberland Railway and Power Company. The plaintiff alleged that these notes were procured through the fraud of the railway and power company, and by it transferred to the Harnett County Trust Company, and that the Union Trust Company afterwards acquired the notes without value or consideration and by virtue of an arrangement made for the purpose of giving the Union Trust Company colorable title and of enabling it to sue upon a claim that it did not own; and, further, that neither of the defendants was an innocent purchaser. The defendants alleged, on the other hand, that the Harnett County Trust Company purchased the notes as a holder in due course, and thereafter and before maturity assigned and delivered them to the Union Trust Company. During the trial a nonsuit was taken as to the Harnett Company, and the action was continued as to the Union Trust Company, the plaintiff demanding a cancellation on the ground that the defendants, or at least the Harnett County Trust Company, acquired the notes with notice of the alleged fraud. The issues as answered by the jury were as follows:

"1. Was the execution of the notes of S. B. Holleman procured by false and fraudulent representations, as alleged in the complaint? Answer: 'Yes.'

"2. Did the defendant, the Harnett County Trust Company, become the holder of the notes in due course for a valuable consideration, and without notice of such false and fraudulent representations? Answer: 'No.'

4—185

"3. What amount, if any, is the Union Trust Company entitled to recover? Answer: 'Nothing.' "

Judgment for the plaintiff. The Union Trust Company appealed.

*Maynard & Williams and Pou, Bailey & Pou for plaintiff.*
*J. M. Broughton and Murray Allen for defendant.*

ADAMS, J. His Honor instructed the jury to answer the third issue "Nothing" if they answered the first issue "Yes" and the second "No." There was evidence tending to show that the notes were procured by false and fraudulent representations, as alleged by the plaintiff, and as the title of the Union Trust Company (in case of an affirmative answer to the first issue) was made to depend on the question whether the Harnett County Trust Company was a holder of the notes in due course, his Honor's instruction as to the law applicable to the second issue was a matter of special importance to the defense.

This instruction, in part, was as follows: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith; knowledge of such facts that would have put a reasonable person upon inquiry, the result of which inquiry would have been to discover that there was fraud in the procuring and execution of the instrument. It has been held by our courts if there are such suspicious circumstances accompanying a transaction, or within the knowledge of the party, as would induce a prudent man to inquire into the title of the holder of the consideration of the paper, he shall be held bound to make such inquiries, or if he neglects to do so, he shall hold the paper subject to all equities. In other words, he shall·act in good faith, and not willfully remain ignorant when it was his duty to inquire into the circumstances and know the facts. Where such circumstances are presented to him that would arrest his attention and require a prudent man to make inquiry, and the result of such inquiry would show the facts and bring home knowledge, a person may not remain ignorant of information that he is required to know. So that is the question presented upon the second issue." Record, pp. 87, 88.

The defendant excepted particularly to the instruction that if the circumstances were such as would induce a prudent man to inquire into the title of the paper it was the holder's duty to make inquiry, and if he neglected to do so, he should hold the paper subject to all equities.

In our judgment this part of his Honor's instruction cannot be sustained under the law as it is now administered in this jurisdiction.

With respect to the question presented, the decisions in other jurisdictions seem to have fluctuated from time to time in response to the various opinions of the courts by whom they were rendered. In the earlier English cases the *bona fides* of the acquisition of a negotiable instrument was the test adopted for determining whether a holder by purchase or discount was protected against equitable or other defenses which would otherwise have been valid against him. In *Lawson v. Weston,* 4 Esp., 56 (1801), it appeared that a lost bill had been found and fraudulently discounted by the finder, and it was contended that the banker could not recover without using due diligence in inquiring into the circumstances respecting both the bill and person who offered it for discount. *Lord Kenyon* said: "If there was any fraud in the transaction, or if a bona fide consideration had not been paid for the bill by the plaintiffs, to be sure they could not recover; but to adopt the principle of the defense to the full extent stated would be at once to paralyze the circulation of all the paper in the country and with it all its commerce." This doctrine remained the law of England until *Lord Chief Justice Abbott (Lord Tenterden),* in *Gill v. Cubitt,* 3 B. & C., 466 (1824), laid down the principle that if a holder for value acquired the instrument under circumstances which ought to have excited the suspicions of a prudent and careful man he could not recover. *Lord Campbell* says that this rule of "circumstances to excite the suspicion of a prudent and careful man" was generally adopted and applied to all cases where the owner of any negotiable instrument had once been induced by improper means to part with the possession of it, as well as to all cases of accidental loss and of robbery, but that the rule died with its author. Lives of the Chief Justices, vol. 5, page 338. Ten years later (1834) the rule was repudiated in *Crook v. Jadis,* 5 B. & Ad., 909, in which it was held that nothing less than gross negligence should deprive a party of his right to recover on a bill of exchange. The latter doctrine continued in force for two years when the Court of King's Bench, in *Goodman v. Harvey,* 4 Ad. & El., 870 (1836), restored the test of good faith as laid down in the early rule. In that case *Lord Denman, C. J.,* said: "The question I offered to submit to the jury was whether the plaintiff had been guilty of gross negligence or not. I believe we are all of opinion that gross negligence only would not be a sufficient answer, when the party was given consideration for the bill. Gross negligence may be evidence of *mala fides,* but is not the same thing. We have shaken off the last remnant of the contrary doctrine. Where the bill has passed to the plaintiff without any proof of bad faith in him, there is no objection to his title."

This is the rule as reëstablished in England and as followed by the greater number of courts in the United States—the reason being that "the experience of the commercial world, and of the courts before which the doctrines here discussed have so often passed in review, have satisfied jurists as well as men of business that the interests of commerce are best subserved by the liberal view which promotes the circulation of negotiable instruments, and that the bona fides of the transaction should be the decisive test of the holder's rights." 1 Calvert's Daniels on Neg. Ins. (6 ed.), secs. 770 *et seq.;* 2 Randolph on Com. Paper (2 ed.), secs. 996 *et seq.;* Huffent on Neg. Ins., 29, 400, 417.

The contrariety of opinion as to a holder's legal rights in case of fraud was materially affected by the Negotiable Instruments Law, which was enacted with a view to securing uniformity of decision in questions involving the law merchant.

Whether the decisions of this Court rendered prior to the adoption of the act gave color or countenance to the instruction complained of we need not here consider (*Smathers v. Hotel Co.,* 162 N. C., 346), for the principles controlling in the case at bar are now defined by statute. A holder in due course is one who has acquired the instrument under the following conditions: "(1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it has been previously dishonored, if such was the fact; (3) that he took it for good faith and value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." C. S., 3033. And section 3037 is to this effect: "To constitute a notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In *Smathers v. Hotel Co., supra,* in the discussion of an instruction substantially similar to that which was given in the instant case, *Hoke, J.,* citing section 3037, *supra,* concluded that the law was designed and intended to establish on this subject and in this jurisdiction the rule as it has been long recognized in England and sustained in this country by the great weight of authority. A similar conclusion was reached by *Walker, J.,* in subsequent appeals taken in the same case, 167 N. C., 469; 168 N. C., 69.

Conceding that the burden was on the defendant to show that the Harnett County Trust Company was a holder in due course, we think his Honor committed error in defining notice of infirmity. A part of the instruction is unexceptionable, but there was error in telling the

jury that if there were such suspicious circumstances connected with the transaction or within the knowledge of the holder as would induce a prudent person to make inquiry he should be required to do so, and in case of failure should hold the paper subject to all equities. Such notice merely as would induce a prudent man to inquire into the circumstances is not sufficient. There must have been actual knowledge of the infirmity or defect, or knowledge of such facts as would amount to bad faith in taking the instrument. Section 3037, *supra; Smathers v. Hotel Co., supra; Critcher v. Ballard,* 180 N. C., 111; Crawford's Anno. Neg. Ins. Law, sec. 95; Brannon's Neg. Ins. Law, sec. 56.

The fact that a portion of the instruction is in accord with the provisions of section 3037 does not cure the error of which the defendant complains, for the instructions were so blended that we cannot tell which one influenced the jury to give their verdict for the plaintiff. *Tillett v. R. R.,* 115 N. C., 663; *Edwards v. R. R.,* 129 N. C., 80; *Anderson v. Meadows,* 159 N. C., 404.

It may not be inappropriate to say in this connection that in *Bank v. Branson,* 165 N. C., 344, it appeared that the bank held a large debt against the importing company and took collaterals to secure it without the slightest inquiry as to the solvency of the makers, and discharged the bondsmen from liability by accepting an endorsement without recourse. The excerpt quoted in that case from *Stevenson v. O'Neal,* 71 Ill., 314, and embodied in the opinion in *Dennison v. Spivey,* 180 N. C., 220, is to the effect that when the note is obtained by fraud, one who claims to be a holder in due course must show that he acted in good faith and not in willful ignorance of the facts.

For the error complained of, there must be a
New trial.