Ruffin, C. J.,
 

 after stating the facts as above, proceeded : — As the decree does not declare the matter of law upon which it is based, it becomes necessary here to examine each of the several points raised in the pleadings.
 

 There is no proof in support of the last position in the answer. The demised premises are described in the declaration in ejectment by the very abuttals contained in the grant to the present defendant, and he has put in no other conveyances to himself but that grant.
 

 
 *371
 
 The time fixed by the-act of1808,
 
 (Rev. ch.
 
 759), for the payment of the' purchase money for entries of land, is the-15th day of December, in the second year after the entry,— not the second 15th of December after its date.
 

 If land be described in an entry as adjoining land of D. C., the fact that D. C. did not own any land adjoining, does notin itself vitiate the entry, espe
 
 *372
 
 cially when the adjoin-was tongtoD6' c.,al- ' never had title to it.
 

 
 *371
 
 The act of 1808,
 
 (Rev. ch.
 
 759), enacts, “ as the standing law in future, that entries made in the course of any one year shall be paid for on or before the 15th December, in the same year thereafter. Upon these words the period is not to be computed from the day of the entry so as to make the price payable in the second December that may succeed the making of the entry. (If that had been meant, it would have been easy to express it much more explicitly than it is. We think the year of the entry, and not the day, is the epoch, from which the computation of the act begins. The 15th of December of the second year after the expiration of the year of entry is the time; as seems almost necessarily inferable from the words “
 
 made in the course of any one year,”
 
 which make “
 
 thereafter,”
 
 referable to that whole year, and not the particular day of that year. This construction is nearly so obvious, that its correctness was taken for granted by this court in
 
 Nunn
 
 v.
 
 Mulholland,
 
 2 Dev. Eq. Rep. 381. If it were doubtful, the court would not be at liberty now to depart from it, as we learn upon inquiry at the executive offices, that a similar one was adopted there upon the passage of the act of 1804, ch. 653-, and has been acted on ever since. A very clear wording could alone authorise a construction in opposition to one so long settled by the officers to whom the execution of the act is immediately confided, and under the annual practical sanction of the members of the legislature, through whose hands, it is well known, iheir.constitu-ents remit a large portion of the purchase money due on entries. Our opinion, therefore, is, that the plaintiff’s payment was made in due time.
 

 ' Another objection is, that if the entry be in itself sufficient, the plaintiff cannot claim this land under it, because in his survey he has departed from the entry, and taken up land that does not adjoin the lands of Daniel Chisholm. We think this position cannot be sustained. The land claimed by the plaintiff, is situate between another tract owned by him, and one on which the defendant resides, and which he now claims. In whom the title actually is, does not appear — the plaintiff’s grant calling for it as Chisholm’s land, and the defendant’s grant as his own. The witnesses on both sides speak of it as having formerly
 
 *372
 
 belonged to one M'Caskell; and it is probable, (though not shown,) that he conveyed it to the defendant. But it is distinctly established by several witnesses, that the eon-tract of purchase was made between M'Caskell and Chisholm, the father-in-law of the defendant; and that Chisholm intended it chiefly as an advancement to his daughter. Being more in value than he then chose to give, it was not conveyed immediately to the defendant, but Chisholm himself took the profits for some time. After-wards, upon Chisholm’s receiving from him a part of the purchase money, he gave up the whole tract to the defendant. It does not appear at what time that occurred', but it is plain from these facts, that Chisholm was at least the equitable owner for a considerable period ; and it is stated by the witnesses, that he was reputed in the neighbour-hood to be the owner, and that about the period when the plaintiff’s entry was made, the land was called Chisholm’s or Harris’s, indifferently.
 

 Every instrument must sufficiently describe the subject of the contract, and if there be but one description, that must of necessity be adhered to. The object of the description is to identify the thing for which the contract is made, and whatever means will effect that end, must be all-sufficient. Judges are at liberty, nay, are bound to-understand the terms of a description in the sense in which the rest of the world, and in which they as men would understand them. It would be mischievous to apply a rule merely artificial to terms not in themselves technical. To-enable a person in the neighbourhood to point out a particular spot to another, the notorious reputation of ownership is a more satisfactory guide than a reference to the strict legal title. It answers the same purpose as the' description in a deed; for the particular line called for must in each case be shown
 
 dehors
 
 the deed, whether it be-a line understood to be that of another, or to be proved by his title paper to be his line. In truth, however, the actual title is seldom thought of, and would generally mislead, if the parties were confined to it. It is called for as it is known, that is, according to the knowledge of the public generally, or common opinion, not according to the , proper title. Thus viewing the subject, the court is of
 
 *373
 
 opinion, that the line called for in the entry as Chisholm’s line, is sufficiently established to be his, for the purposes of. identity, and that in his survey the plaintiff did not depart from his entry.
 

 The remaining point, is one on which there have been few adjudications in this state, and none reported. The court thus not being familiar with the doctrine, has not adopted their conclusion without hesitation. But from the best consideration we have been enabled to bestow on it, our opinion upon that is also adverse to the defendant.
 

 The plaintiff’s entry is extremely vague. It is contended to be so much so as to be radically defective and void. Such must be the consequence if the directions of the act of 1783,
 
 (Rev. ch.
 
 185, § 11,),be peremptory as to the means by which an enterer must in his entry ascertain the land intended to be embraced in it. But we think that is not the proper construction of the statute, but that it is directory ; that an entry is not absolutely void in any case, merely because it is not as special as the party could have made it by the use of all the
 
 indicia,
 
 internal and external, supplied by the act as evidences of identity; but that it ought to be valid or invalid in respect of a subsequent entry according to the fact, that the second enterer may or may not have sustained loss by the want of particularity in it. Without going minutely through all the reasons, some may be mentioned which have been sufficient to satisfy our minds that the act is directory in its character. It is plain that it was not intended that the entry should be so specific as entirely within itself to identify the land by its boundaries, because the same statute commands a survey to follow the entry at a short interval, and in the seventeenth section points out the means of identity to be set out in the certificate of survey. It is obvious to the most cursory observer, that the requisitions of the act are less strict in reference to the objects discovered by the survey, than in respect to those which the entry must specify, if the statute is to be literally taken. By the eleventh section, not only “ remarkable places” within the entry, but also “ water courses, mountains, and remarkable places, nearest to,” but without the land, are to be stated
 
 *374
 
 in the entry, while the other section omits the whole of them. To insist that the former section is peremptory, 'wou^ be *° make the entry supersede the use of the survey altogether. Besides, we know that the state wished to have all her vacant lands appropriated as speedily as possible, and that at that period the purchase money was paid to the entry taker, so as immediately to constitute the enterer an equitable purchaser. . The legislature cannot be supposed to have intended those provisisions as a trap to catch the money of the citizens for public uses, and at the same time avoid the claim for the land by reason of some trivial oversight of one of the many objects, internal and external, specified in the act. The truth is, that the interest of the state, as vendor, was not at all concerned in the entry’s being more or less special. The quantity was alone important to her, because that regulated the price. Again: the entry has never been considered in this state as a constituent part of the legal title : and for that reason such precision in its terms is not necessary, as will upon their face connect and identify the land granted with that entered.
 

 It appears to the Court, therefore, that a vague entry is not void, as against the state; but gives the enterer an equity to call for the completion of his title by the public officers. If it be not void against the state, it is a’necessary consequence, as we think, that it is likewise not so as against a subsequent purchaser from the state with notice.
 

 The act, although directory, is to be so construed as will insure protection to other and innocent persons, desirous of taking up land. That we think was the purpose of the legislature, and therefore we hold that to be the meaning of the law. The entry, therefore, ought,
 
 prima
 
 facie, to be so explicit in its calls, as to give reasonable notice to a second enterer of the first appropriation. If it do not, and the same land be entered again, the last purchaser has conscience on his side, while the fault is on the other. What calls will suffice to this end may much depend upon the state of the country, and the opportunities and dangers of exploring and gaining an exact know
 
 *375
 
 ledge of it. Circumstances may justify a legislature' oí a court in requiring a call for something
 
 notorious,
 
 by which a. second enterer could
 
 easily
 
 identify the particular land, while in other cases, identity alone might be deemed sufficient for all purposes in an entry, as it is in common deeds of conveyances between man and man. We are not aware that more than terms of identity were ever supposed indispensable in this state. If they were,- they cannot now be, because such alone are at present useful. But the discussion need not be pursued on this subject,- for it may be admitted, and such is our opinion, that the entry must import to describe the land so that another person may identify it thereby; and, therefore, that one who makes a second entry might have done it before he laid out his money. If, then, the plaintiff’s claim had rested on his entry merely, at the time the1 defendant entered, we should have no difficulty inf pronouncing it defective. It calls for nothing but the line of Chisholm’s,without saying which line, or on what side of the line the land was situate. But that was not the state of the case'. The plaintiff had taken further steps to set apart the land from all other. He surveyed it, and completely identified it, and of that the defendant had full knowledge before the inception of his title. This he confesses in his answer and is fully proved by his surveyor, who had also made the survey for the plaintiff! We have before" stated that the only purpose on which a special entry is preferred to a general and vague one, is to’give notice to a second enterar. If that be correct, the specific notice established in’this case must supply the original defect in the entry, it is a defect which does not avoid i’t altogether, but only displaces it when otherwise it would prejudice the ignorant and the innocent.- But, like an unregistered- deed, it gives a complete equity against one who does know of its existence and of the particular land surveyed- under it— provided he come to that- knowledge before' he parts with his money,- or, as our law now stands, makes his entry. The case is within the principle of
 
 Roberts
 
 v.
 
 Erwin,
 
 2 Hawks, 48, in which it was held at law, that distinct personal notice to-a creditor supplies the want of an adver
 
 *376
 
 tisement, required by the act of 1796, of the intention of a debtor to remove.
 

 We think it makes no difference, that the plaintiff had not paid his purchase money at the time the defendant entered. The act of 1808 altered that of 1783, and extended the credit it is true. But the entry gave the plaintiff the right of pre-emption, of which the defendant could not rightfully deprive him having the knowledge he had.
 

 The Court therefore deems the decree heretofore pronounced erroneous, and reverses it with costs in both courts, and declares the plaintiff entitled to have a conveyance of the land covered by both grants, to be restored to the possession and quieted therein. The Court would order a reference for an account of the profits, if it had not been declined by the plaintiff.
 

 It has been in several cases held, that the plaintiff cannot recover his own costs at law, when he has defended them upon a title merely equitable; but the defendant is bound to repay the costs recovered by him at law; and it is referred to the master of Montgomery to ascertain and report them.
 

 Per CURIAH. Decree below reversed.