The plaintiff H. B. Newton alleges that he is the owner of a tract of land in Pender County containing more than 8,000 acres; that the plaintiff W. L. Parsley is the owner of all the timber twelve inches and upwards in diameter standing upon said land; that they and those under whom they claim have been for more than twenty-one years, and are now, in the open, notorious, adverse and exclusive possession of said land under known and visible boundaries; that the defendants have entered upon said lands "without any color of title, and unlawfully, willfully, wantonly and maliciously cut around or belted several hundred cypress trees and left them in such a condition that they will die, etc., and that they threaten to continue and are continuing to cut, injure and destroy the timber standing on said land and to commit other trespasses thereupon, etc. They ask that the defendants be enjoined from (440) continuing further trespasses, etc.; for damages and other relief. The defendants deny the material allegations of the complaint, and for a further defense aver that the lands claimed by plaintiff, or the portion thereof in controversy, was, prior to 1 January, 1903, vacant lands, and title thereto was in the State; that on 6 January, 1903, and on other dates named in the answer, certain entries were made which are fully set out in the answer, one of said entries being by J. W. Rowe, afterwards transferred to H. A. Brown, Jr.; another entry being made by H. A. Brown, Jr., and the third by defendant A. W. Taylor. They allege that in respect to the first entry the defendant H. A. Brown has perfected the same and is entitled to a grant therefor, and having paid the money to the Secretary of State for said grant is the equitable owner of the land described in said entry. With respect to the second entry he has acquired an equitable interest therein. The same allegation is made in respect to the entry of A. W. Taylor. The defendants *Page 320 
further say that in respect to the last two entries named the plaintiffs, H. B. Newton and W. L. Parsley, filed a protest, all of which is fully set forth in the record. They deny that the plaintiffs are the owners of the land because the same was public land prior to said entries. They allege that the plaintiffs are cutting timber and otherwise injuring the land to their damage. They further allege that the plaintiffs claim title to the land under a deed from L. A. Hart and E. D. Hall to Jacob Roberts and C. L. Woodworth, dated 30 November, 1870, and by intermediate deeds to plaintiffs. Defendants allege that the plaintiffs have had no possession under such general description, and that their possession is limited, if they have had any possession thereto, under certain deeds from one Willey and others to said Hall, bearing date of 12 December, 1850, and that said (441) deed only conveys portions of said land. That the said Hart and others undertook to convey by the description set out in the complaint, and in doing so included some 9,000 acres of land, although by the conveyances to them they only acquired about 2,000 acres of that land, which has never been reduced to actual possession by the plaintiffs. In accordance with the prayer in the complaint the judge, on 12 October, 1903, made an order enjoining and restraining the defendants from cutting timber or otherwise trespassing upon the said lands. This order was made upon the complaint, certain deeds and affidavits introduced in evidence. From this order no appeal was taken. On 9 November, 1903, his Honor, Judge Brown, issued notice to the plaintiffs to show cause why they should not be enjoined from committing trespass on the land, and upon the return of the notice and on reading the affidavits introduced by the plaintiffs and defendants he made an order on 21 December, 1903, continuing said injunction against the plaintiffs until the hearing of said order. His Honor recited as follows: "The defendants have already been enjoined from cutting or removing timber from said lands at instance of the plaintiffs in this action. The cause was submitted on written brief, affidavits and plats. Having considered the same I am of opinion that the plaintiffs should be restrained pending this action. It is true that a considerable part of the land is claimed by defendants under entries. I am of opinion that they have acquired thereby — and by payment of the money to the State — such an equitable interest in the lands in controversy as should induce a court of equity to prevent the lands being denuded until the title is settled, and this may be done independent of Laws 1901, ch. 666. The spirit and purpose of that act covers, I think, this case also. Let the defendants give bond in the sum of $1,000, *Page 321 
with usual conditions, to indemnify plaintiffs, to be approved by the clerk of Pender County Superior Court, (442) and then let the injunction be continued until the final hearing."
From this order the plaintiffs appealed. The order made by his Honor continuing the injunction against the defendants is based upon the finding that the plaintiffs have made out a prima facie
title to the land in controversy. We think his Honor is fully sustained by the deeds, affidavits and other exhibits filed before him. The only question presented by the appeal from the order restraining the plaintiffs from proceeding is whether the defendants have made out such a prima facie case as entitles them to the order made by his Honor. Without discussing the conflicting affidavits in regard to the boundaries of the several tracts of land in controversy, we think there is sufficient evidence if believed to show that the plaintiffs and those under whom they claim have been in possession of the land in controversy since 1870. If that be true the State had thereby become divested of its title by such possession, and the land was not subject to entry. While it is true that an entry made in accordance with the statute confers upon the party making it an equity to call for a grant upon paying the amount prescribed by the statute and otherwise conforming with the law, we do not think that he has such an interest in the land as of itself entitles him to interfere with the possession and use of the land by those who show a possession for thirty years. The entry is not based upon any declaration by the State or its officers that the land is vacant. It is, on the contrary, the simple statement by the person making the entry that such land is vacant. He pays no money and assumes no obligation by making the entry. He acquires nothing more than an option to complete his entry and call for a grant. At the time that this action was brought and the pleadings filed no grants were issued for either of the tracts of land in controversy. On 18 November, 1903, a grant was issued by the State for the tract of land entered (443) on 6 January, 1903, containing 500 acres. In S. v.Bevers, 86 N.C. 588, Ruffin, C. J., says: "It is notorious that grants are always issued at the instance of the grantee and upon his suggestion that the land is vacant. The State does not warrant it to be so or the liability of the land to entry. Nor is it any fraud in the State to grant land that is not so liable." We cannot think that one who simply declares that a body of land is vacant, and thereupon proceeds to lay an entry, acquires such an interest as entitles him to interfere by injunction with the possession of one who is found to be in possession. If he shall *Page 322 
follow his entry by taking out a grant and paying his money he has an adequate remedy to sue the person in possession upon his grant.
It will be observed that his Honor does not base his order upon a finding of facts required by chapter 666 of the Laws of 1901, but says expressly that independent of the statute the defendant is entitled to the injunction. It will be well to consider the case as if the defendants had brought the action asking the court to restrain the plaintiffs from cutting the timber from the land until they could perfect the entries by obtaining grants from the State and prosecuting their action for the recovery of the land. Their asserted right to affirmative relief is brought forward in the nature of a cross-bill or, in the language of the Code, a counterclaim. Their right to do so is recognized in Lumber Co. v.Wallace, 93 N.C. 22. When the defendant relies upon a counterclaim and demands affirmative relief he becomes in that respect an actor, and takes upon himself the burden of roof as if he were the plaintiff. Viewed from this standpoint, in the light of all the testimony, the plaintiffs are in the possession of certain lands, the boundaries of which are uncertain and in controversy; the defendants alleging that they are (444) cutting timber beyond the boundaries covered by their deeds on lands belonging to the State; that they have made entries upon a portion of the lands, and thereby acquired an equity to call upon the State for grants by complying with the statute. The plaintiffs set up deeds which they claim cover the lands in controversy, and assert possession since 1870. We do not think that the defendants would, in this view, be entitled to an injunction to restrain Newton and Parsley from cutting the timber. It is settled by the uniform decisions of this Court that an entry of lands creates an "inchoate equity" in them, which entitles the enterer, upon payment of the amount fixed by the statute, to a grant. No case is cited in the defendants' well-prepared brief in which an action for any purpose has been sustained before the issuance of the grant. This Court has expressly held in Hall v. Hollifield,76 N.C. 476, that "The public lands of the State are open to entry by any of its citizens, and the first declaration of intention is made on the books of the entry taker in the county where the land lies, and this gives priority, called a pre-emption right. No estate or interest in the land is thereby acquired. No consideration is paid and none of the requisites for that purpose are performed, but simply the right to be preferred when the money is paid and the other formalities required by the statute are complied with." That the court will be injunction protect the owner of an equitable *Page 323 
estate from waste cannot be questioned. Whether one having "an inchoate equity," or a bare right to call for a grant from the State, will be permitted to enjoin the person in possession from using the land for the purpose for which it is fit is an entirely different question. We find no case in this State in which the Court recognized the right of an enterer to maintain an action for any purpose. Brem v.Houck, 101 N.C. 627, is an express authority that he cannot have injunctive relief against the issuing of (445) a grant to another person. Courts of equity prior to 1855 were very slow to interfere by injunction with the use and enjoyment of land by those in possession, and declined to do so unless the plaintiff had established, or was seeking in the law courts to establish, his legal title. It was necessary to allege and show that irreparable injury was threatened. Usually it was necessary to show insolvency. Lyerly v.Wheeler, 45 N.C. 267; 59 Am. Dec., 596; Thompson v. Williams,54 N.C. 176; Bogey v. Shute, 54 N.C. 180 (S.C., 57 N.C. 174);Thompson v. McNair, 62 N.C. 121. At the session of 1885 (chapter 401) an act was passed declaring that "It shall not be necessary to allege the insolvency of the defendant," etc. The language of Merrimon, J., in Lumber Co. v. Wallace, supra, is peculiarly appropriate to this case: "While we are of the opinion that the defendants are entitled to relief, we think that the plaintiffs ought not to be restrained from cutting, using or selling timber until the action shall be heard upon its merits. No special or peculiar cause is alleged why the timber may not be cut and sold. This is not a case wherein a party aggrieved alleged irreparable injury. We can see no adequate reason why the defendants, if they succeed in this action, may not be fully compensated in damages if adequate means shall be afforded them for ascertaining the reasonable value of the timber. This may be done. It is against the policy of the law to restrain industries and such enterprises as tend to develop the country and its resources. It ought not to be done unless in extreme cases, and this is not one." Lewis v. Lumber Co., 99 N.C. 11, in which it is said: "It appears that the defendant is cutting and carrying away from the land ordinary forest timber suited to the purpose of marketing lumber for the markets. Obviously the plaintiffs may be compensated in damages for this timber." To the suggestion (446) that the land covered by the defendants' entries is included in the Wheaton grant of 1795, and that the deed of the sheriff to the State under a tax sale vests the title in the board of education, and is therefore not subject of entry, it is sufficient to say that it is not necessary that we should express any *Page 324 
opinion. It is worthy of consideration, at the proper time, whether lands thus granted by the State and purchased for delinquent taxes come within the terms "vacant and unappropriated lands belonging to the State." Ruffin,J., in S. v. Bevers, supra, says that they were subject to entry, but that by the act of 1872 they were ceded to the board of education. The affidavits tend to show that the lands in controversy are covered by the Wheaton grant. Upon the whole record we think that his Honor should not have restrained the plaintiffs. Because the court will enjoin at the instance of one in possession a continuous and highly injurious trespass by one having an "inchoate equity," not based upon anything more than his "laying an entry," it does not follow that it will at his instance interfere with the use and possession of one who has made out a prima facie
case of a possession under color of title for more than thirty years. If the defendants are so advised they may move the court to require the plaintiffs to file a bond to indemnify them against loss by cutting the timber if they shall finally make good their intention. It will be within the sound discretion of the judge to make such orders in that respect as he may deem to be proper. The injunction order appealed from should be vacated.
Error.
Cited: Janney v. Blackwell, 138 N.C. 439; Frasier v. Gibson,140 N.C. 277; Lumber Co. v. Cedar Co., 142 N.C. 418; Fisher v. Owen,144 N.C. 652.
(477)