I. S. FISHER v. W. J. OWEN.

(Filed 22 May, 1907).

1. **State's Lands—Entry—Description—Evidence.**—The entry upon the State's unimproved and vacant lands must import to describe the land so that another person may identify it thereby. Under Revisal, sec. 1707, an entry describing the lands as "six hundred and forty acres on the waters of the Toxaway River, Transylvania County," followed by a grant to "a tract of land lying on both sides of Toxaway River, beginning at a hickory on the east side of the river, the northwest corner of Harriet Fisher's homestead tract, * * * containing four hundred and thirty acres," etc., is void for uncertainty of description and affords no notice to a subsequent enterer; and the description cannot be aided by testimony that the State had no other land which it could grant in that immediate locality adjoining Harriet Fisher's homestead tract and did not own there more than four hundred and thirty acres.

2. **Same—Notice—Trustee.**—When an entry upon the State's unimproved and vacant land is void for vagueness of description as against a subsequent enterer, and not made more definite by survey in the required time, it can afford no actual or implied notice to the subsequent enterer; and he, having perfected his entry, cannot be declared to hold as trustee for the prior enterer.

CIVIL ACTION, tried before *O. H. Allen, J.,* and a jury, at August Term, 1906, of the Superior Court of TRANSYLVANIA County.

The plaintiff seeks to have the defendant declared a trustee for his benefit, in respect to the land described in the complaint. The case was disposed of in the Superior Court upon the opinion of the Judge that plaintiff was not entitled to judgment, and so instructed the jury. The plaintiff introduced the record of an entry made in the entry taker's office, Transylvania County, by J. B. Burgess, 4 July, 1896, as follows: "J. B. Burgess enters and claims 640 acres of land on the waters of Toxaway River, in Transylvania County, North Carolina, beginning on the northwest corner of the Harriet Fisher homestead tract of land and adjoining the lands of I. S. Fisher and others, and runs various courses for complement." The defendant objected to the entry because the description was too vague and uncertain. His Honor was of the opinion with defendant, but admitted the entry to enable the plaintiff to show the location by survey—or to show actual notice to defendant. Plaintiff next introduced a grant from the State to J. B. Burgess, I. S. Fisher and John Fisher, assignees, bearing date 28 December, 1898, to a tract of land "lying on both sides of Toxaway River, beginning at a hickory on the east side of the river, the northwest corner of Harriet Fisher's homestead tract," and running by metes and bounds set out in the grant in full to the beginning, containing 430 acres. The plaintiff testified to the location of the land described in the grant. He thereupon introduced an entry made by defendant of 100 acres, 24 October, 1896,

which is conceded to cover a portion of the land included in the grant to plaintiff.   He also introduced a grant from the State to defendant, bearing date 26 July, 1897, registered 9 June, 1898.   This grant covers 59 acres, being a portion of the land included in the entry of 24 October, 1896.   This entry and grant were introduced by· plaintiff ·to show legal title in defendant.   For the purpose of showing actual notice ·to defendant, the plaintiff introduced A. J. Lee, who testified: "I was present when W. J. Owen had his survey made for his grant.   I. S. Fisher was not present, but J. B. Burgess came to us while we were surveying.   He ˙came up and asked us what we were doing.   He said we would better get out of there; said 'this is Slick Fisher's land.'   That he (Fisher) would be mad when he found it out.   Before beginning the survey Owen said for us to wait and he would go out of there; said 'this is Slick Fisher's land.'   That he said Fisher was not at home, but that he would go on and run out the land anyway." .

Plaintiff offered to show that the State had no other land in that immediate locality adjoining the ˙lands of Harriet Fisher's homestead tract, I. S. Fisher and others, vacant, which it could grant, except what the Burgess entry was intended to cover and did cover; that the State did not own more than 430 acres of land in that locality.   Plaintiff offered to show that the grant issued on the Burgess entry was surrounded on every side and on every line and angle with State grants, or deeds and possessions equal to grants. This testimony was excluded, and plaintiff excepted.   Burgess testified that while defendant was making the survey he told him that "he better not make the survey; it might cause hard feelings."   His Honor instructed the jury to answer the ·issue, Did the defendant, W. J. Owen, lay his entry and take out his grant with notice of the plaintiff's entry, as alleged?

"No." Plaintiff excepted. From a judgment on the verdict plaintiff appealed.

*Welch Galloway* for plaintiff.

*George A. Shuford* and *Shepherd & Shepherd* for defendant.

CONNOR, J., after stating the case: The plaintiff insists that his Honor erred in holding that the Burgess entry was void for vagueness and uncertainty in the description of the land intended to be included in it, and that it did not afford notice to defendant. He further insists that if he is in error in this, that defendant had actual knowledge of facts and circumstances putting him upon inquiry, which, if prosecuted, would have given him notice, and that he thereby had constructive notice. It is well settled that an entry of land creates an "inchoate equity" which becomes a complete legal title upon payment of the money and taking grant. That a person making a subsequent entry, followed by a survey and grant, with notice of the first entry, acquires the legal title, but will be declared to hold as trustee for the prior enterer. *Gilchrist v. Middleton,* 107 N. C., 678; *Newton v. Brown,* 134 N. C., 439. Section 1707, Revisal, containing the statute in force in 1896, provides that "Claimant shall set forth in his entry where the land is situated, the present watercourses and remarkable places as may be therein, the natural boundaries and the lines of any other person, if any, which divide it from other lands." Does the description in the entry, under which plaintiff claims, comply with these requirements? It will be observed that we are not discussing the question whether the entry is sufficient, after survey is made and grant issued by the State, to vest the title.. The State alone is interested in this question, and, as said by *Judge Ruffin* in *Harris v. Ewing,* 21 N. C., 369, it is only so in regard to the quantity. In that case it is said: "The

entry must import to describe the land so that another person may identify it thereby; and, therefore, that one who makes a second entry might have done it before he laid out his money." The learned Judge says in that case that if the plaintiff's claim had depended on his entry alone the Court would have had no difficulty in pronouncing it defective, but that he surveyed it and completely identified it, and of that the defendant had full knowledge before the inception of his title. While, to a large extent, each case must depend upon its peculiar facts, we may be aided by referring to some of the decisions of this Court in regard to the sufficiency of entries to put a second enterer upon notice. In *Johnston v. Shelton,* 39 N. C., 85, the language was "640 acres of land, beginning on the line dividing the counties of Haywood and Macon, at a point at or near Lowe's Bear Pen, on the Hog Back Mountain, and running various courses for complement." *Ruffin, C. J.,* says: "Its vagueness renders it void as against a subsequent enterer who surveys and pays his money before the plaintiffs had made their entry more specific, if the expression may be allowed, by a survey, identifying the land they meant to appropriate." The opinion in this case is exhaustive and conclusive. In *Munroe v. McCormick,* 41 N. C., 85, the entry was "640 acres of land in the county of Cumberland, on the head of Big Cross Creek, joining the Toney and Murchison lands." *Pearson, J.,* holding the entry void, says: "Where one makes an entry so vague as not to identify the land, such entry does not amount to notice, and does not give any priority of right as against another individual who makes an entry, has it surveyed and takes out a grant. Where an entry is vague it acquires no priority until it is made certain by a survey. The good sense of this principle will strike every one as soon as it is suggested." In *Fuller v. Williams,* 45 N. C., 162, the description is "one hundred acres of land on the waters of

Uharie, adjoining the lands of his own, and runs for complement." Held void for uncertainty. In *Grayson v. English,* 115 N. C., 358, *Mr. Justice Avery* reviews the case and says: "The two methods of affecting all subsequent enterers with constructive notice are: 1. By making a survey of a floating or vague entry containing an indefinite description, and thus identifying that which was before uncertain. 2. By making the description, etc., explicit, so as to give reasonable notice to a second enterer of the first appropriation. The object of description is to identify the thing for which the contract is made, and whatever means will effect that end must be all sufficient." In that case the entry was "540 acres of land lying on both sides of Huntsville (or Haney) Mountain, extending from the north end along the summit and down both sides to deeded lands adjoining Miles Higgins, John Jarrett, the Prices and others."

By the light reflected upon the subject by these decisions, and the reasoning upon which they are suported, we are brought to concur with his Honor that the entry is too vague and indefinite to affect the rights of one who enters, surveys, pays his money and takes a grant. The land entered is said to be on the waters of Toxaway River, but when the grant is taken the location is made "on both sides" of the river. Again, it is to be noted that while the beginning is sufficiently definite, there is nothing in the entry indicating in what direction the first call would go or where it would reach the I. S. Fisher land. We note that in the grant there are nine calls before the Fisher land is reached. Giving to the entry the most liberal construction in aid of its sufficiency, we are unable to see how a person desiring to make an entry in that section could ascertain, by reference to the entry itself, where the enterer intended to locate. In our judgment, it comes clearly within the description of a "floating entry," which, until surveyed and located, is void as to other persons who may

make and take a grant.  The enterer may-have surveyed his entry and thereby acquired his inchoate equity or preemption, which, if perfected within the time prescribed, would have given him a good title or a perfect equity against any intervening enterer.  Does the testimony, taken most strongly for plaintiff, show knowledge of such facts and circumstances as were sufficient to put him upon inquiry?  A number of expressions are used by the Judges indicating the opinion that the only notice which will be sufficient to protect a vague, indefinite entry is a survey, and, as said by *Judge Pearson,* the good sense of this principle is manifest.  Suppose that Burgess had taken the defendant to the beginning point called for, and used to him the exact language of the entry, what more would he have known than the entry disclosed?  In *Harris v. Ewing, supra,* wherein the second enterer is held to be fixed with notice of a vague entry, the land was surveyed "before the inception of his title."  *Judge Ruffin* says that such "specific notice" will supply the original defect in the entry.  Assuming, however, that the defendant can be fixed with notice otherwise than by a survey, the question arises, What facts and circumstances were known to him?  Lee says that Burgess told him that the land being surveyed was "Slick Fisher's land."  This is very far from telling him that it was land which he (Burgess) had entered.  Defendant went off to see if Fisher was at home, and said that he was not there.  The statement made by Burgess was not true.  It was not Fisher's land.  So far as the evidence shows, the assignment by Burgess to the two Fishers of an interest in the entry had not at that time been made; the date of the assignment was not shown.  The grant, made several months later, was to Burgess and the two Fishers as tenants in common.  Burgess says that he told defendant he better not make the survey; it would cause hard feeling.  This falls far short of indicating that Fisher claimed

the land. We do not see how Jacob's testimony is any more helpful to plaintiff. We concur in the well-considered argument of plaintiff's counsel that knowledge of any facts and circumstances reasonably calculated to put a man on inquiry makes it his duty to make inquiry, and that he will be fixed with notice of all facts which such inquiry would have elicited. We do not find in the testimony knowledge of such facts and circumstances. Burgess knew he had entered the land, and should have known what land he entered, and yet when he saw defendant surveying what he claims to be his entry he does not suggest to him that he is on such entry, but contents himself with saying that to survey it will cause hard feelings and that Fisher will be angry—that he "is on Slick Fisher's land." There is another fatal defect in plaintiff's case. The grant shows that the title is in Burgess, the plaintiff and another. There is no sufficient evidence that his cotenant had ever conveyed to him the land covered by defendant's entry and grant. Burgess says that there was some agreement to that effect. In any aspect of the testimony we concur with his Honor's ruling. The judgment must be

Affirmed.