### S. P. TAYLOR v. JOHN T. RILEY et al.

(Filed 12 October, 1910.)

**Injunction—Cutting Timber—Undefined Right—Equity.**

An injunction against cutting timber will not be granted when it appears that the plaintiff claims an ill-defined balance of profits made by some of the defendants with others, thereof, under a contract which clearly contemplates the cutting of the timber within a prescribed time; when some of the defendants are solvent and may be made to respond in damages; and in passing upon the question of injunction the courts of equity will consider the relative loss or advantage to the parties, as, in this case, the expiration of the time in which defendant may cut the timber under the terms of the contract. As to whether Revisal, secs. 807, 808, 809, apply. *Quare?*

APPEAL from *Cooke, J.,* from PENDER, heard 6 April, 1910, upon a motion to continue a restraining order to the hearing.

His Honor disallowed the motion and dissolved the restraining order, and plaintiff appealed.

The plaintiff alleged that he entered into a written contract in June, 1905, with W. T. Sears and S. M. Lloyd, whom he

averred were the purchasing agents of the defendants Riley & Co., under the terms of which he procured deeds to be made to a large amount of standing timber, in Pender County, to Riley & Co.; that he, the plaintiff, held at that time options on the said timber. The nature of the contract between Sears and Lloyd and the defendants, Riley & Co., is thus stated by plaintiff in the third paragraph of his complaint: "3. That, on or about the 14th day of April, 1905, the defendants, W. S. Sears and S. M. Lloyd, entered into a contract with the defendants, John T. Riley and Henry C. Riley, partners, trading as Charles S. Riley & Co., under and by the terms of which contract the said W. T. Sears and S. M. Lloyd were to buy timber in the eastern part of North Carolina, and that the defendants, Chas. S. Riley & Co., were to furnish the money to pay the purchase price of said timber, the title to which was to be taken in the name of the defendants, Charles S. Riley & Co., and held by them as security for the purchase money, together with interest on the same, at six per cent per annum, until the said W. T. Sears and S. M. Lloyd should repay the purchase money to the said Charles S. Riley & Co., to belong to the said W. T. Sears and S. M. Lloyd."

The plaintiff also in the fourth paragraph of his complaint, thus stated his contract with Sears and Lloyd: "4. That, on the 31st day of July, 1905, the plaintiff, S. P. Taylor, entered into a contract with W. T. Sears and S. M. Lloyd, whereby it was agreed that the plaintiff, S. P. Taylor, then holding and owning certain timber rights and options as hereinbefore alleged, should sell and convey the same, and have the same conveyed to the defendant, Charles S. Riley & Co., in consideration of which the said W. T. Sears and S. M. Lloyd did agree to buy and pay for the said timber then owned and controlled by the said S. P. Taylor (which said timber is hereinafter described), out of the funds provided for in the contract between W. T. Sears and S. M. Lloyd and Charles S. Riley & Co., and did, in said contract of conveyance, convey to the plaintiff, S. P. Taylor, one-half interest and profits in the said timber, which said contract and conveyance is duly recorded in the record of Pender County, in Book 51, at page 347, and a copy of which said contract and agreement is hereto attached, marked Exhibit A,

and made a part of this paragraph as fully and completely as if the same were set out herein in full."

The complaint further alleges that subsequent to this time, S. M. Lloyd and W. T. Sears incorporated their business and organized a company known as W. T. Sears & Co., incorporated, and that this company took over all of the contracts and obligations of W. T. Sears and S. M. Lloyd, and, "9. That, on the 20th day of June, 1907, the plaintiff, S. P. Taylor, entered into a contract and agreement with the defendant, W. T. Sears & Co., incorporated, whereby the defendant, W. T. Sears & Co., incorporated, whereby the defendant, W. T. Sears & Co., incorporated, agreed to pay the plaintiff, S. P. Taylor, the sum of fifty cents (50 cts.) per thousand feet stumpage on all of the timber described in paragraph sixth of this complaint, being the same the title to which was, and is, held by Charles S. Riley & Co., and, to secure the performance of said agreement and stipulation on the part of the said W. T. Sears & Co., incorporated, the said W. T. Sears & Co., incorporated, conveyed to the said plaintiff, S. P. Taylor, all their title, right, equity and estate in the timber described in paragraph six of this complaint, which said contract and conveyance is duly recorded on the record of Pender County, in Book 55, at page 155, a copy of which contract and conveyance is hereto attached, marked Exhibit B, and made a part of this paragraph as fully and completely as if the same were set out herein in full."

The defendants denied that any such contract, as stated in paragraph 3 of the complaint, was made by them with Lloyd and Sears, and specifically any and all knowledge of any right or equity in the plaintiff; and further answering the complaint, the defendants said: "15. Defendants Charles S. Riley & Co., further answering the plaintiff's bill, say that at the time they purchased and paid for the timber mentioned in the bill filed, they were the owners of other timber in Columbus, Bladen and Brunswick counties, which W. T. Sears and S. M. Lloyd had agreed to purchase, upon terms which included the performance by W. T. Sears and S. M. Lloyd of all contracts with Charles S. Riley & Co., and the payment of a price which would net Charles S. Riley & Co. fifty cents per thousand above the purchase money

paid, with interest at six per cent.   The timber mentioned in the bill filed was purchased by Charles S. Riley & Co. at the solicitation of W. T. Sears and S. M. Lloyd, with the intention that it should be included with the other timber lands, upon the same agreement of sale to W. T. Sears and S. M. Lloyd; although no writing to that effect was executed.   Defendants further say that while the insolvency of W. T. Sears and S. M. Lloyd and of W. T. Sears & Co., inc., will prevent the completion of the contracts which was a prerequisite of the consummation of the sale, Charles S. Riley & Co. are willing to give to the receiver of W. T. Sears & Co., if exercised promptly, the right to purchase and receive a conveyance of all of the said timber in said counties, including the timber set out in the bill, upon payment of the sum which should have been payable by W. T. Sears and S. M. Lloyd, assuming that they had not lost their rights by their failure to perform their contracts, which sum would be one hundred and twenty-five thousand nine hundred and eighty-seven dollars and twenty-five cents ($125,987.25)."

W. T. Sears is dead, S. M. Lloyd is insolvent, and the corporation, W. T. Sears & Co., inc., is insolvent and in the hands of a receiver, John D. Bellamy.   The defendants, Riley & Co., are solvent.   Subsequently to the bringing of this action, Riley & Co. sold to Joseph G. McNeal, L. G. Cannon and W. A. Cannon, who were acting for the Garysburg Mfg. Co., incorporated (all of whom were solvent), and they are cutting the timber in Pender County.   S. M. Lloyd filed an affidavit in which he stated, among other things:   "This affiant further swears that neither he nor W. T. Sears ever had anything more than a possibility of an equity in said timber and timber rights that is alleged in plaintiff's petition, the deeds of which are enumerated in said petition, and that the firm of W. T. Sears & Co. or W. T. Sears & Co., inc., had no contract whatever with Chas. S. Riley & Co. to purchase land or timber in Pender County, by which the said W. T. Sears or S. M. Lloyd, or W. T. Sears & Co., inc., were to have an equity in said timber in Pender County.

"This affiant further swears that he and his co-partner, W. T. Sears, had various and sundry contracts to furnish lumber to

the Hannah Box Shook Company of Wilmington, North Caro-
lina, to make box shooks, and that he and his partner were en-
gaged in shipping lumber, and that Chas. S. Riley & Co. pur-
chased large tracts of timber land in Columbus, Brunswick and
Bladen counties and agreed with this affiant and his partner, and
after W. T. Sears & Co., inc., was organized with W. T. Sears
& Co., inc., that if this affiant and his partner and W. T. Sears
& Co., inc., would perform all of their contracts, that is, cut the
timber and furnish the lumber to complete the contracts with
the Hannah Box Shook Company and other contracts, that
Chas. S. Riley & Co. had made to take the output, that then
after they had paid Chas. S. Riley & Co. back the money that
Chas. S. Riley & Co. had put into the timber in Brunswick,
Bladen and Columbus counties and six per cent interest and
fifty cents per thousand feet profit on the timber, and if there
was any standing timber remaining after complying with the
contracts and performing the contracts and paying off all that
W. T. Sears and S. M. Lloyd and W. T. Sears & Co., inc., owed
to Chas. S. Riley & Co. for money furnished for the operation
of the business, that then Chas S. Riley & Co. would recover
whatever timber they had in Bladen, Brunswick and Columbus
counties after these contracts had been performed, and all debts
had been paid, but the holdings in Pender County were not in-
cluded in that agreement, and there was no writing therefor, but
it was the intention that if W. T. Sears & Co., inc., and W. T.
Sears and S. M. Lloyd performed their contract, that then they
reasonably expected that the Pender County timber should be
included under a like agreement.

This affiant further swears that it is true that a contract with
this affiant and W. T. Sears was made on the 31st day of July,
A. D. 1905, and signed by affiant, but affiant does not recall that
he knew the purport thereof, for the reason that he was the finan-
cial manager of W. T. Sears & Co. and W. T. Sears & Co., inc.,
and W. T. Sears made all of the contracts and sent them to him
to sign, and he was in Norfolk and down with a spell of fever
when it was sent to him, but affiant does distinctly remember a
conversation that took place between S. P. Taylor and Henry
C. Riley, of the firm of Chas. S. Riley & Co., at the Kinyon

House, a hotel in Goldsboro, North Carolina, some time about the first of October, 1905, in which S. P. Taylor stated to Henry C. Riley, of the firm of Chas. S. Riley & Co., that he had whatever equity S. M. Lloyd and W. T. Sears had in the timber now in controversy, and that Henry C. Riley told said Taylor that neither this affiant nor W. T. Sears, nor W. T. Sears & Co., inc., had any interest whatever in said timber, and that no person, firm or corporation, had any interest whatsoever in said timber, except the firm of Chas. S. Riley & Co., and that if he, Taylor, expected anything out of that property, that he had best get that notion out of his head, and that if he, Taylor, had any claim whatsoever against W. T. Sears & Co., or W. T. Sears & Co., inc., that he would have to get it personally out of them, as they had no right, title, interest or equity whatever in the Pender County holdings.

This affiant further swears that it is true that W. T. Sears and himself, through the plaintiff, procured this Pender County timber for the use of Chas. S. Riley & Co., and that Chas. S. Riley & Co. paid every dollar for the timber at the time they purchased it and furnished the money to this affiant and W. T. Sears to pay for the same, and that the plaintiff, S. P. Taylor, went out and got options on the timber and estimated the same, and that it frequently occurred that the plaintiff would buy the timber and land at a certain specific price, and the timber was deeded to Chas. S. Riley & Co. for what both the timber and land cost, and the title to the land was taken sometimes in the name of S. P. Taylor individually, and at other times in the name of other parties to this affiant unknown; but he does recall a number of instances in which this was done, and when the land was sold the proceeds derived therefrom were divided between S. P. Taylor, the affiant, and W. T. Sears, and this was a clear profit to S. P. Taylor; and whatever amount this affiant and W. T. Sears, or W. T. Sears & Co., received from the transactions of that kind, their part of it went into the business of W. T. Sears & Co., inc., and the plaintiff pocketed his amount.

This affiant further says that it is true that whatever profit he and his partner, W. T. Sears or W. T. Sears & Co., inc., were to get out of this timber in buying the same, they were to pay .

to the plaintiff one-half of the same and the plaintiff bore one-half of the expenses and they the other half; but affiant avers that any such profit was contingent upon W. T. Sears and himself and W. T. Sears & Co., inc., being able to carry out their part of the other contracts with Chas. S. Riley & Co., as herein-before set out.

This affiant further says that he and his partner composed the firm of W. T. Sears & Co., and that W. T. Sears & Co., the partners individually, and the corporation known as W. T. Sears & Co., Inc., fell down on every contract they made with Chas. S. Riley & Co., and were unable to perform any of the contracts either for cutting timber or manufacturing timber into lumber, or furnishing timber or lumber to the Hannah Box Shook Company, and that their equity in the timber in Bladen, Brunswick and Columbus counties was dependent upon the performance of all these various and sundry contracts, and by the failure on their part to comply with the terms of the contracts that they had made, they forfeited any equity they had in any timber in Columbus, Bladen and Brunswick counties that stood in the name of Chas. S. Riley & Co., and having failed in their contracts made, and never having begun in Pender County, they never had, and never claimed, any equity whatsoever in the timber in Pender County, and this affiant does not recall any conversation that he ever had with the plaintiff, in which he stated to him that he had an equity, or that his firm or corporation had an equity in the Pender County timber; and that at the time of the conversation the plaintiff and Henry C. Riley had at Goldsboro, North Carolina, this affiant told the plaintiff then that neither he nor W. T. Sears, nor W. T. Sears & Co., nor W. T. Sears & Co., inc., had any contract with Chas. S. Riley & Co. as to the Pender County timber; that the contracts they had were for the timber that Chas. S. Riley & Co. owned in Columbus, Bladen and Brunswick counties, and did not apply specifically to Pender County and was not so construed.

In the contract between plaintiff and W. T. Sears & Co., inc., it is expressly agreed that W. T. Sears & Co., inc., "shall immediately enter upon the cutting of the said timber and shall con-

tinue the cutting and delivering of the same until all of the said timber is cut," and provided for payment to plaintiff of a stipulated sum per 1,000 feet so cut.

*E. K. Bryan* and *Stevens, Beasley & Weeks* for plaintiff.
*Geo. Rountree* and *J. T. Bland* for J. G. McNeill and L. G. Cannon.
*Herbert McClammy* for C. S. Riley & Co.

MANNING, J., after stating the case.    We approve his Honor's judgment declining to continue the injunction to the hearing. According to the evidence presented to him, it is very doubtful if sections 807, 808, 809, Revisal, govern in this case.    The plaintiff does not claim title to "timber lands," nor is this action brought to try the title thereto.    The most that plaintiff claims is not a very clearly defined equity in any balance that may be left after certain obligations of Sears & Co. have been discharged to Riley & Co., and this resting upon a contract which clearly contemplates the cutting of the timber and its manufacture into lumber, the doing of which he now seeks to enjoin. The affidavits disclose that all the defendants, except S. M. Lloyd and W. T. Sears & Co., inc., are amply solvent and able to respond to any judgment the plaintiff may eventually recover. As the action is not terminated, we refrain from comments upon the facts presented in the affidavits, and content ourselves with saying that we do not think the plaintiff has brought himself either within the statutory provisions or the general principles of equity which entitle him to injunctive relief.    This is particularly true, in view of the ample solvency of defendants and the stipulation that the timber shall be cut, and the further fact that the deeds conveying the timber provide that it shall be cut in a stipulated number of years, which will soon expire, so the injury to the plaintiff cannot be irreparable.    To enjoin the cutting of the timber until the action shall be finally determined will result in great loss to the defendants, with no commensurate advantage to the plaintiff.    The measure of loss to one party and the advantage to the other by granting or refusing the injunctive relief, has its proper influence in determining the relief to be admin-

istered in a court of equity, except in those cases controlled by some positive statutory enactment. *Lumber Co. v. Wallace,* 93 N. C., 22; *Newton v. Brown,* 134 N. C., 439; *Lumber Co. v. Hines Bros.,* 127 N. C., 130; *Lewis v. Lumber. Co.,* 99 N. C., 11; *R. R. v. Mining Co.,* 112 N. C., 661; *Blackwell v. McElwell,* 94 N. C., 425; *Heilig v. Stokes,* 63 N. C., 612; *McCorkle v. Brem,* 76 N. C., 407.

It is unnecessary to pass upon some of the interesting questions argued before us, as they will more properly be considered at the trial of the action upon a more complete presentation of the facts. Discovering no error, the judgment is

Affirmed.