His Honor disallowed the motion and dissolved the restraining order, and plaintiff appealed.
The plaintiff alleged that he entered into a written contract in June, 1905, with W. T. Sears and S. M. Lloyd, whom he averred were (196) the purchasing agents of the defendants Riley Co., under the terms of which he procured deeds to be made to a large amount of standing timber, in Pender County, to Riley Co.; that he, the plaintiff, held at that time options on the said timber. The nature of the contract between Sears and Lloyd and the defendants, Riley Co., is thus stated by plaintiff in the third paragraph of his complaint: "3. That, on or about the 14th day of April, 1905, the defendants, W. S. Sears and S. M. Lloyd, entered into a contract with the defendants, John T. Riley and Henry C. Riley, partners, trading as Charles S. Riley Co., under and by the terms of which contract the said W. T. Sears and S. M. Lloyd were to buy timber in the eastern part of North Carolina, and that the defendants, Chas. S. Riley Co., were to furnish the money to pay the purchase price of said timber, the title to which was to be taken in the name of the defendants, Charles S. Riley Co., and held by them as security for the purchase money, together with interest on the same, at six per cent per annum, until the said W. T. Sears and S. M. Lloyd should repay the purchase money to the said Charles S. Riley Co., to belong to the said W. T. Sears and S. M. Lloyd."
The plaintiff also in the fourth paragraph of his complaint, thus stated his contract with Sears and Lloyd: "4. That, on the 31st day of July, 1905, the plaintiff, S. P. Taylor, entered into a contract with W. T. Sears and S. M. Lloyd, whereby it was agreed that the plaintiff, S. P. Taylor, then holding and owning certain timber rights and options *Page 161 
as hereinbefore alleged, should sell and convey the same, and have the same conveyed to the defendant, Charles S. Riley Co., in consideration of which the said W. T. Sears and S. M. Lloyd did agree to buy and pay for the said timber then owned and controlled by the said S. P. Taylor (which said timber is hereinafter described), out of the funds provided for in the contract between W. T. Sears and S. M. Lloyd and Charles S. Riley Co., and did, in said contract of conveyance, convey to the plaintiff, S. P. Taylor, one-half interest and profits in the said timber, which said contract and conveyance is duly recorded in the record of Pender County, in Book 51, at page 347, and a copy of which said contract and agreement is hereto attached, marked Exhibit A, and made a part of this paragraph as fully and completely as if (197) the same were set out herein in full."
The complaint further alleges that subsequent to this time, S. M. Lloyd and W. T. Sears incorporated their business and organized a company known as W. T. Sears Co., incorporated, and that this company took over all of the contracts and obligations of W. T. Sears and S. M. Lloyd, and, "9. That, on the 20th day of June, 1907, the plaintiff, S. P. Taylor, entered into a contract and agreement with the defendant, W. T. Sears Co., incorporated, whereby the defendant, W. T. Sears Co., incorporated, agreed to pay the plaintiff, S. P. Taylor, the sum of fifty cents (50 cts.) per thousand feet stumpage on all of the timber described in paragraph sixth of this complaint, being the same the title to which was, and is, held by Charles S. Riley Co., and, to secure the performance of said agreement and stipulation on the part of the said W. T. Sears Co., incorporated, the said W. T. Sears Co., incorporated, conveyed to the said plaintiff, S. P. Taylor, all their title, right, equity and estate in the timber described in paragraph six of this complaint, which said contract and conveyance is duly recorded on the record of Pender County, in Book 55, at page 155, a copy of which contract and conveyance is hereto attached, marked Exhibit B, and made a part of this paragraph as fully and completely as if the same were set out herein in full."
The defendants denied that any such contract, as stated in paragraph 3 of the complaint, was made by them with Lloyd and Sears, and specifically any and all knowledge of any right or equity in the plaintiff; and further answering the complaint, the defendants said: "15. Defendants Charles S. Riley Co., further answering the plaintiff's bill, say that at the time they purchased and paid for the timber mentioned in the bill filed, they were the owners of other timber in Columbus, Bladen and Brunswick counties, which W. T. Sears and S. M. Lloyd had agreed to purchase, upon terms which included the performance by W. T. Sears and S. M. Lloyd of all contracts with Charles S. Riley Co., and *Page 162 
the payment of a price which would net Charles S. Riley Co. fifty cents per thousand above the purchase money paid, with interest (198) at six per cent. The timber mentioned in the bill filed was purchased by Charles S. Riley Co. at the solicitation of W. T. Sears and S. M. Lloyd, with the intention that it should be included with the other timber lands, upon the same agreement of sale to W. T. Sears and S. M. Lloyd; although no writing to that effect was executed. Defendants further say that while the insolvency of W. T. Sears and S. M. Lloyd and of W. T. Sears Co., Inc., will prevent the completion of the contracts which was a prerequisite of the consummation of the sale, Charles S. Riley Co. are willing to give to the receiver of W. T. Sears Co., if exercised promptly, the right to purchase and receive a conveyance of all of the said timber in said counties, including the timber set out in the bill, upon payment of the sum which should have been payable by W. T. Sears and S. M. Lloyd, assuming that they had not lost their rights by their failure to perform their contracts, which sum would be one hundred and twenty-five thousand nine hundred and eighty-seven dollars and twenty-five cents ($125,987.25)."
W. T. Sears is dead, S. M. Lloyd is insolvent, and the corporation, W. T. Sears Co., Inc., is insolvent and in the hands of a receiver, John D. Bellamy. The defendants, Riley Co., are solvent. Subsequently to the bringing of this action, Riley Co. sold to Joseph G. McNeal, L. G. Cannon and W. A. Cannon, who were acting for the Garysburg Manufacturing Company, incorporated (all of whom were solvent), and they are cutting the timber in Pender County. S. M. Lloyd filed an affidavit in which he stated, among other things: "This affiant further swears that neither he nor W. T. Sears ever had anything more than a possibility of an equity in said timber and timber rights that is alleged in plaintiff's petition, the deeds of which are enumerated in said petition, and that the firm of W. T. Sears Co. or W. T. Sears Co., Inc., had no contract whatever with Chas. S. Riley Co. to purchase land or timber in Pender County, by which the said W. T. Sears or S. M. Lloyd, or W. T. Sears Co., Inc., were to have an equity in said timber in Pender County.
"This affiant further swears that he and his co-partner, W. T. Sears, had various and sundry contracts to furnish lumber to the Hannah (199) Box Shook Company of Wilmington, North Carolina, to make box shooks, and that he and his partner were engaged in shipping lumber, and that Chas. S. Riley Co., purchased large tracts of timber land in Columbus, Brunswick and Bladen counties and agreed with this affiant and his partner, and after W. T. Sears Co., Inc., was organized with W. T. Sears Co., Inc., that if this affiant and his partner and W. T. Sears Co., Inc., would perform all of their contracts, *Page 163 
that is, cut the timber and furnish the lumber to complete the contracts with the Hannah Box Shook Company and other contracts, that Chas. S. Riley Co. had made to take the output, that then after they had paid Chas. S. Riley Co. back the money that Chas. S. Riley Co. had put into the timber in Brunswick, Bladen and Columbus counties and six per cent interest and fifty cents per thousand feet profit on the timber, and if there was any standing timber remaining after complying with the contracts and performing the contracts and paying off all that W. T. Sears and S. M. Lloyd and W. T. Sears Co., Inc., owed to Chas. S. Riley Co. for money furnished for the operation of the business, that then Chas. S. Riley Co. would recover whatever timber they had in Bladen, Brunswick and Columbus counties after these contracts had been performed, and all debts had been paid, but the holdings in Pender County were not included in that agreement, and there was no writing therefor, but it was the intention that if W. T. Sears Co., Inc., and W. T. Sears and S. M. Lloyd performed their contract, that then they reasonably expected that the Pender County timber should be included under a like agreement.
This affiant further swears that it is true that a contract with this affiant and W. T. Sears was made on the 31st day of July, A.D. 1905, and signed by affiant, but affiant does not recall that he knew the purport thereof, for the reason that he was the financial manager of W. T. Sears Co. and W. T. Sears Co., Inc., and W. T. Sears made all of the contracts and sent them to him to sign, and he was in Norfolk and down with a spell of fever when it was sent to him, but affiant does distinctly remember a conversation that took place between S. P. Taylor and Henry C. Riley, of the firm of Chas. S. Riley Co., at the Kennon House, a hotel in Goldsboro, North Carolina, some time about the first of October, 1905, in which S. P. Taylor stated to Henry C. Riley, of (200) the firm of Chas. S. Riley Co. that he had whatever equity S. M. Lloyd and W. T. Sears had in the timber now in controversy, and that Henry C. Riley told said Taylor that neither this affiant nor W. T. Sears, nor W. T. Sears Co., Inc., had any interest whatever in said timber, and that no person, firm or corporation, had any interest whatsoever in said timber, except the firm of Chas. S. Riley Co., and that if he, Taylor, expected anything out of that property, that he had best get that notion out of his head, and that if he, Taylor, had any claim whatsoever against W. T. Sears Co., or W. T. Sears Co., Inc., that he would have to get it personally out of them, as they had no right, title, interest or equity whatever in the Pender County holdings.
This affiant further swears that it is true that W. T. Sears and himself, through the plaintiff, procured this Pender County timber for *Page 164 
the use of Chas. S. Riley Co., and that Chas. S. Riley Co. paid every dollar for the timber at the time they purchased it and furnished the money to this affiant and W. T. Sears to pay for the same, and that the plaintiff, S. P. Taylor, went out and got options on the timber and estimated the same, and that it frequently occurred that the plaintiff would buy the timber and land at a certain specific price, and the timber was deeded to Chas. S. Riley Co. for what both the timber and land cost, and the title to the land was taken sometimes in the name of S. P. Taylor individually, and at other times in the name of other parties to this affiant unknown; but he does recall a number of instances in which this was done, and when the land was sold the proceeds derived therefrom were divided between S. P. Taylor, the affiant, and W. T. Sears, and this was a clear profit to S. P. Taylor; and whatever amount this affiant and W. T. Sears, or W. T. Sears Co., received from the transactions of that kind, their part of it went into the business of W. T. Sears Co., Inc., and the plaintiff pocketed his amount.
This affiant further says that it is true that whatever profit he and his partner, W. T. Sears or W. T. Sears Co., Inc., were to get out of this timber in buying the same, they were to pay to the plaintiff one-half of the same and the plaintiff bore one-half of the expenses (201) and they the other half; but affiant avers that any such profit was contingent upon W. T. Sears and himself and W. T. Sears Co., Inc., being able to carry out their part of the other contracts with Chas. S. Riley Co., as hereinbefore set out.
This affiant further says that he and his partner composed the firm of W. T. Sears Co., and that W. T. Sears Co., the partners individually, and the corporation known as W. T. Sears Co., Inc., fell down on every contract they made with Chas. S. Riley Co., and were unable to perform any of the contracts either for cutting timber or manufacturing timber into lumber, or furnishing timber or lumber to the Hannah Box Shook Company, and that their equity in the timber in Bladen, Brunswick and Columbus counties was dependent upon the performance of all these various and sundry contracts, and by the failure on their part to comply with the terms of the contracts that they had made, they forfeited any equity they had in any timber in Columbus, Bladen and Brunswick counties that stood in the name of Chas. S. Riley Co., and having failed in their contracts made, and never having begun in Pender County, they never had, and never claimed, any equity whatsoever in the timber in Pender County, and this affiant does not recall any conversation that he ever had with the plaintiff, in which he stated to him that he had an equity, or that his firm or corporation had an equity in the Pender County timber; and that at the time of the conversation the plaintiff and Henry C. *Page 165 
Riley had at Goldsboro, North Carolina, this affiant told the plaintiff then that neither he nor W. T. Sears, nor W. T. Sears Co., nor W. T. Sears Co., Inc., had any contract with Chas. S. Riley Co. as to the Pender County timber; that the contracts they had were for the timber that Chas. S. Riley Co. owned in Columbus, Bladen and Brunswick counties, and did not apply specifically to Pender County and was not so construed.
In the contract between plaintiff and W. T. Sears Co., Inc., it is expressly agreed that W. T. Sears Co., Inc., "shall immediately enter upon the cutting of the said timber and shall continue the cutting and delivering of the same until all of the said timber is (202) cut," and provided for payment to plaintiff of a stipulated sum per 1,000 feet so cut.
After stating the case: We approve his Honor's judgment declining to continue the injunction to the hearing. According to the evidence presented to him, it is very doubtful if sections 807, 808, 809, Revisal, govern in this case. The plaintiff does not claim title to "timber lands," nor is this action brought to try the title thereto. The most that plaintiff claims is not a very clearly defined equity in any balance that may be left after certain obligations of Sears Co. have been discharged to Riley Co., and this resting upon a contract which clearly contemplates the cutting of the timber and its manufacture into lumber, the doing of which he now seeks to enjoin. The affidavits disclose that all the defendants, except S. M. Lloyd and W. T. Sears Co., Inc., are amply solvent and able to respond to any judgment the plaintiff may eventually recover. As the action is not terminated, we refrain from comments upon the facts presented in the affidavits, and content ourselves with saying that we do not think the plaintiff has brought himself either within the statutory provisions or the general principles of equity which entitle him to injunctive relief. This is particularly true, in view of the ample solvency of defendants and the stipulation that the timber shall be cut, and the further fact that the deeds conveying the timber provide that it shall be cut in a stipulated number of years, which will soon expire, so the injury to the plaintiff can not be irreparable. To enjoin the cutting of the timber until the action shall be finally determined will result in great loss to the defendants, with no commensurate advantage to the plaintiff. The measure of loss to one party and the advantage to the other by granting *Page 166 
or refusing the injunctive relief, has its proper influence in determining the relief to be administered in a court of equity, except in those cases controlled by some positive statutory enactment.Lumber Co. v. Wallace, 93 N.C. 22; Newton v. Brown,134 N.C. 439; Lumber Co. v. Hines, 127 N.C. 130;Lewis v. Lumber Co., 99 N.C. 11; R. R. v. Mining Co.,112 N.C. 661; Blackwell v. McElwell, 94 N.C. 425;Heilig v. Stokes, 63 N.C. 612; McCorkle v. Brem, 76 N.C. 407.
It is unnecessary to pass upon some of the interesting questions argued before us, as they will more properly be considered at the trial of the action upon a more complete presentation of the facts. Discovering no error, the judgment is
Affirmed.